# EXHIBIT "A"

```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE



OTSUKA PHARAMCEUTICAL  )
CO., LTD., et al.,     )
                       )
        Plaintiffs,    )   C.A. No. 22-464-CFC-JLH
                       )
v.                     )
                       )
MYLAN LABORATORIES     )
LIMITED, et al.,       )
                       )
        Defendants.    )




              Friday, December 8, 2023
              1:00 p.m.
              Teleconference


              844 King Street
              Wilmington, Delaware




BEFORE:  THE HONORABLE JENNIFER L. HALL
    United States District Court Judge




APPEARANCES:


        ASHBY & GEDDES, P.A.
        BY:  STEVEN J. BALICK, ESQ.

            -and-

        FINNEGAN, HENDERSON, FARABOW,
        GARRETT & DUNNER, LLP
        BY:  PAUL W. BROWNING, ESQ.
        BY:  JEANETTE M. ROORDA, ESQ.

                    Counsel for the Plaintiff
```

```
APPEARANCES CONTINUED:

        RICHARDS, LAYTON & FINGER, P.A.
        BY:  CHRISTINE DEALY HAYNES, ESQ.
        BY:  FREDERICK L. COTTRELL, III, ESQ.

                    -and-

        PERKINS COIE, LLP
        BY:  SHANNON M. BLOODWORTH, ESQ.
        BY:  MARIA A. STUBBINGS, ESQ.

                    Counsel for the Defendant


        ----------------------------
```

                THE COURT:  Good afternoon, everyone.  This is

Jen Hall.  We're here on the line today for a discovery

dispute teleconference.  This is Otsuka versus Mylan.  It's

civil action number 22-464-CFC-JLH.

                Do we have somebody on the line for plaintiffs?

                MR. BALICK:  Yes.  Good afternoon, Your Honor.

Steven Balick from Ashby & Geddes for the plaintiffs, along

with Paul Browning and Jeanette Roorda from the Finnegan

firm.

                THE COURT:  Good afternoon.  And do we have

somebody on the line for defendants?

                MS. HAYNES:  Yes.  Good afternoon, Your Honor.

This is Christine Haynes from Richards, Layton & Finger.

13:03:17 1   And with me in my office is Fred Cottrell.  Also on the line

13:03:21 2   from Perkins Coie are Shannon Bloodworth and Maria Stubbings

13:03:25 3   and from the clients, Preston Imperatore.

13:03:31 4            THE COURT:  Good afternoon to all of you.  So

13:03:34 5   there's a lot going on here.  I guess we'll start with

13:03:37 6   plaintiff's request for additional depositions.  Go ahead.

13:03:46 7            MS. ROORDA:  Good afternoon, Your Honor.  This

13:03:48 8   is Jeannette Roorda on behalf of plaintiffs.  And as you

13:03:51 9   notice, plaintiffs are seeking the Court's assistance in

13:03:54 10  obtaining timely noticed depositions.  And as we explained,

13:04:00 11  there's no reasonable dispute as to the fact that these

13:04:03 12  noticed witnesses have discoverable information and we would

13:04:07 13  like assistance in being able to proceed with those

13:04:10 14  depositions in person.

13:04:15 15           Several of the witnesses have relevant

13:04:17 16  information related to the technical subject matter of

13:04:20 17  defendant's ANDA products, which, as we've explained to

13:04:24 18  defendants, is relevant to our positions on validity, as

13:04:29 19  well, as even though defendants are not contesting

13:04:32 20  non-infringement, we will still have the burden of showing

13:04:36 21  non-infringement as plaintiffs, so we would like to move

13:04:38 22  forward with those depositions.

13:04:42 23           And each witness that's been identified has

13:04:47 24  specific information that is relevant to the ANDA products.

13:04:51 25  Defendants have acknowledged that in their paragraph 3

13:04:54 1   disclosures as well as their amended initial disclosures and

13:04:59 2   in response to our discovery requests.

13:05:01 3          As we showed in a chart in our letter, the

13:05:04 4   majority of the custodial documents that were produced came

13:05:08 5   from these noticed witnesses.  And they have information

13:05:12 6   that we believe is relevant to topics in dispute and that

13:05:17 7   defendant's 30(b)(6) witnesses were not able to cover in

13:05:20 8   their depositions.

13:05:29 9          MS. STUBBINGS:  Excuse me.  I'm so sorry,

10   Jeannette.  This is Maria Stubbings for defendants, from

13:05:35 11   Perkins Coie and I believe Shannon Bloodworth from our firm

13:05:39 12   was dropped from the call and she's attempting to join and

13:05:42 13   she's not hearing anything, so I just wanted to see if there

13:05:45 14   was some way she could be rejoined to the call.  And I'm

13:05:49 15   really sorry for the interruption.

13:05:51 16          THE COURT:  This is Judge Hall.  That's fine.

13:05:54 17   Why don't we all take a pause and someone can let me know

13:05:58 18   when she's rejoined.

13:06:10 19          MS. BLOODWORTH:  This is Shannon Bloodworth.

13:07:02 20          THE COURT:  All right.  This is Judge Hall.

13:07:02 21   Let's continue on.  We were hearing from plaintiffs.

13:07:08 22          MS. BLOODWORTH:  Yeah.  I'm so sorry, Your

13:07:10 23   Honor.  I don't know why I wasn't joined in.  Thank you.

13:07:14 24          MS. ROORDA:  And Your Honor, we'd like you to

13:07:18 25   know all of these depositions were timely noticed.

13:07:20 1          And I'd like to take a moment now just to see if

13:07:24 2     you have any questions that I can specifically address.

13:07:26 3          THE COURT:  Okay.  I just want to make sure I

13:07:28 4     understand something you said right at the outset.  Are you

13:07:31 5     saying that defendants are not contesting infringement, but

13:07:36 6     that you were still going to put on an infringement case?

13:07:39 7     Is that what you said?

13:07:40 8          MS. ROORDA:  So defendants have dropped their

13:07:44 9     non-infringement defense, but our understanding is we still

13:07:48 10    have the burden of proof for infringement.

13:07:54 11         THE COURT:  Okay.  Let me just stop you right

13:07:56 12    there.  I'll give you a chance to add on to that.  Let me

13:07:59 13    ask the defendants.  Are you saying that they're going to

13:08:02 14    have to put an infringement case on at trial or have you

13:08:05 15    dropped it in the sense that we're all going to agree

13:08:07 16    infringement is not an issue?

13:08:09 17         MS. BLOODWORTH:  Your Honor, this is Shannon

13:08:11 18    Bloodworth for defendants.  We no longer will be challenging

13:08:14 19    infringement to the '469 Patent, which is the only one that

13:08:18 20    we have remaining.  So no, we were not expecting plaintiffs

13:08:22 21    to put on an infringement case at trial.

13:08:25 22         I guess, Your Honor -- there are the CYP Patents

13:08:28 23    as well.  This is relating to the hydrate patent, the '469

13:08:33 24    patent in the case.

13:08:34 25         THE COURT:  Understood.  Understood.  So let's

13:08:36 1  turn it back over to the plaintiffs and we'll just take it

13:08:39 2  piece wise here.  Are these depositions somehow relevant to

13:08:43 3  infringement of the CYP Patents?

13:08:46 4          MS. ROORDA:  No.  And just one moment before I

13:08:48 5  address that, Your Honor.  I wanted to note that there isn't

13:08:51 6  currently a direct stipulation of non-infringement, just

13:08:55 7  that the defendants have dropped their defense of

13:08:58 8  non-infringement, but would not agree to a stipulation.  And

13:09:01 9  so that's part of plaintiff's position as to why we still

13:09:04 10 have a burden to show infringement.

13:09:07 11         THE COURT:  Understood.  Okay.  Well, we've got

13:09:11 12 representations made on the phone here today, so -- and I'm

13:09:15 13 hearing from defendant here today that they're not going to

13:09:17 14 make you put on an infringement case.  So let's put that

13:09:21 15 aside and let's hear from you about whether or not these

13:09:25 16 individuals have information relevant to infringement of the

13:09:29 17 CYP Patents.

13:09:31 18         MS. ROORDA:  With regard to infringement of the

13:09:35 19 CYP, we also refer to the that is the CYP Patents.  Those

13:09:41 20 patents relate to the use of the product according to the

13:09:45 21 proposed labeling of the defendants and that would be

13:09:48 22 information that's relevant to both their regulatory and

13:09:51 23 financial witnesses that would have looked at, for example,

13:09:54 24 the patient populations that would be treated under these

13:09:58 25 dosing regimens and the market that's available and then

13:10:02 1   also how those labels would be followed and used in

13:10:05 2   practice.

13:10:05 3            THE COURT:  Okay.  So that's three of the

13:10:09 4   witnesses.  What about the other ones, the ones you have

13:10:12 5   listed as technical?

13:10:14 6            MS. ROORDA:  Yes, we've got those, two of the

13:10:17 7   witnesses, Katie Reed, the financial, and Shrikant Dhage as

13:10:24 8   the regulatory.  The remaining witnesses all have, our

13:10:28 9   understanding, is relevant and responsive information

13:10:31 10  related to different technical aspects of the defendants

13:10:35 11  ANDA product and the research and development of those

13:10:38 12  products.  And this relates to the '469 Patent, which we

13:10:41 13  refer to as the Hydrate A patent.  And it deals with the

13:10:49 14  polymorphic form of the active pharmaceutical ingredient

13:10:53 15  inner aripiprazole.  And the information that we would like

13:10:57 16  to seek fact testimony on relates to ███████████████████

13:11:01 17  ████████████████████████████████   ████

13:11:04 18  ████████████████████████████████████

13:11:11 19  █████████████████████████████████████████

13:11:14 20  ███████████████████████████████████

13:11:16 21  ████████████████████████████████████

13:11:21 22  ██████████   And so we're seeking fact discovery on that topic

13:11:24 23  and we believe that the individuals that we've noted were

13:11:28 24  directly involved in the research and development.  And the

13:11:31 25  30(b)(6) witnesses that defendants designated that we have

13:11:37 1    had the opportunity to depose have been unable to answer

13:11:41 2    questions on those topics or on documents related to that

13:11:44 3    time period and those events.

13:11:45 4                 THE COURT:  Okay.  Sorry for interrupting.  So I

13:11:48 5    think what I heard you say is -- and you can tell me if I've

13:11:53 6    got this wrong -- that these people have information

13:11:56 7    relevant to validity because ████████████████████████████

13:12:00 8    ████████████████████ and you've got a reason why that is

13:12:05 9    relevant to your assertion that the patents in this case are

13:12:09 10   not invalid.  Is that fair to say?

13:12:12 11                MS. ROORDA:  Yes, Your Honor.  That is fair to

13:12:14 12   say.

13:12:14 13                THE COURT:  Okay.  And the depositions that

13:12:18 14   you're requesting, you're going to get these done, if I was

13:12:21 15   allowing it, within the number of hours that you've been

13:12:25 16   allotted for deposition testimony?

13:12:28 17                MS. ROORDA:  Yes, Your Honor.

13:12:29 18                THE COURT:  Okay.  Why don't we talk about this

13:12:32 19   in person versus in India versus over the Zoom issue.

13:12:40 20   Defendants are pointing out that you can't -- I mean, if I

13:12:47 21   said you were allowed to conduct depositions of these folks

13:12:52 22   in India, I mean, can you or can't you do that under Indian

13:12:52 23   law.

13:12:52 24                MS. ROORDA:  Okay.  So, yes, Your Honor.  I

13:13:02 25   guess first we'd like to note what we're seeking is that the

13:13:06 1    depositions would be in person with at least the questioner

13:13:10 2    present in person.  The court reporter could still

13:13:12 3    participate remotely.  And we're willing to travel to any

13:13:16 4    location that works for defendants.  Our understanding is

13:13:19 5    currently India is the only option for that.  But, for

13:13:22 6    example, if defendants were able to travel to -- we have an

13:13:25 7    office in London where we could host depositions or we would

13:13:30 8    be amenable to considering other locations as well beyond

13:13:32 9    India.  As far as whether we can conduct the depositions in

13:13:34 10   India, the Axtria case that both parties have cited in their

13:13:42 11   letters, have some discussion of that.  And in that case the

13:13:45 12   Court considered whether the Hague Convention procedures

13:13:50 13   were required to be followed or if the Federal Rule of Civil

13:13:54 14   Procedure could be applied for depositions in India.  It is

13:13:58 15   a fact-specific inquiry in that particular case.  The Court

13:14:02 16   did make the determination that it was acceptable to proceed

13:14:05 17   under the Federal Rules of Civil Procedure.  In that case

13:14:09 18   the defendants had argued that even the video depositions

13:14:14 19   would have been prohibited by the Hague Convention.  The

13:14:18 20   district court found that that argument had been waived due

13:14:21 21   to its absence in the defendant's briefing, but there is a

13:14:25 22   footnote included in that case that even if that argument

13:14:28 23   was permitted, the Court found it unconvincing because there

13:14:31 24   was no showing that Indian citizens faced any significant

13:14:34 25   risk of prosecution in complying with the Federal Rules of

13:14:38 1   Civil Procedure with regard to their depositions and noted

13:14:41 2   that the Hague Convention served merely as an alternative or

13:14:46 3   permissive route to the Federal Rules of Civil Procedure.

13:14:50 4           THE COURT:  All right.  Let me hear from

13:14:54 5   defendants.

13:14:55 6           MS. BLOODWORTH:  Yes, Your Honor.  Thank you.

13:14:57 7   This is Shannon Bloodworth for the defendants.  A couple

13:15:01 8   points of clarification.  On November 17th was the first

13:15:05 9   time we've ever received any contentions or discovery

13:15:10 10  responses from plaintiffs that cited to our documents in

13:15:14 11  support of their validity case.  So this is new information.

13:15:20 12  This is also in plaintiff's letter was the first time we

13:15:24 13  have heard anything about our 30(b)(6) witnesses being

13:15:28 14  unprepared.  We had not met and conferred on that issue.  I

13:15:32 15  disagree strongly with the characterizations of plaintiffs

13:15:35 16  of those witnesses.

13:15:37 17          So to day we have provided a witness, a 30(b)(6)

13:15:39 18  and a 30(b)(1) witness on our marketing, you know, sales, et

13:15:44 19  cetera, financial information.  That gentleman was David

13:15:48 20  Mitchell.  Katie Reed, whom you've heard discussed that they

13:15:52 21  also wanted to depose, reports directly to Mr. Mitchell, so

13:15:55 22  her information would be completely duplicative of anything

13:16:00 23  of Mr. Mitchell's.

13:16:01 24          Also with respect to the regulatory issues,

13:16:04 25  which is, you know, relating to our proposed labeling, for

13:16:07  1   example, with the CYP patents, they did depose Nitin Bhattad

13:16:14  2   in his 30(b)(6) and 30(b)(1) capacities.  He is the head of

13:16:17  3   regulatory science global injectables.  And Mr. Dhage, whom

13:16:21  4   they are seeking, is -- again, reports directly to Mr.

13:16:26  5   Bhattad.  We also --

13:16:27  6          THE COURT:  Can I just ask you.  Out of their

13:16:31  7   list of folks here, some of these they're requesting in

13:16:36  8   their letter have already been deposed?

13:16:38  9          MS. BLOODWORTH:  No.  So, Your Honor.  The

13:16:40 10   persons that they're requesting in their letter, Mr.

13:16:44 11   Shrikant Shage is duplicative of Nitin Bhattad who has

13:16:50 12   already been deposed.  Katie read, whom they're requesting,

13:16:55 13   our argument is duplicative of David Mitchell, who has

13:16:59 14   already been deposed.

13:17:00 15          THE COURT:  Okay.

13:17:02 16          MS. BLOODWORTH:  And we did also provide,

13:17:04 17   despite not having any contentions or interrogator

13:17:09 18   responses, in order to try to solve this dispute, in

13:17:11 19   addition to offering Mr. Meda by remote deposition, which

13:17:17 20   they repeatedly rejected, we did prepare and have deposed

13:17:21 21   Dan Snider on these topics.  Many of the questions and

13:17:22 22   complaints that you heard from plaintiffs were imposed to

13:17:29 23   Mr. Snider who had spoken to several of the individuals whom

13:17:32 24   he needed to speak to and was well prepared for that

13:17:32 25   deposition.  Again, we did not hear any complaints about our

witnesses be being unprepared until we received plaintiff's
letter to the Court.

And so the remaining witnesses were on our
3(b)(6) disclosures because they may have had discoverable
information when we had all 10 patents in the case, when the
formulation patents were in the case, all of which have now
been dismissed as well as non-infringement to the Hydrate
patent.  And again, we never heard -- none of our documents,
our ANDA or our EMFs were ever cited in any of the
plaintiff's validity contentions.  We actually didn't have
any real information from them on what their secondary
considerations case was until we first received that on
November 17th.

So those widths are all -- the remaining six, I
believe, Your Honor, are all in India.  You cannot take
depositions in India of Indian nationals, even if they are
voluntary, without going through the Indian authority or the
Hague.  I think the -- the fact of comedy and whether or not
that deposition would take place under the rules, the
Federal Civil Rules of Civil Procedure would govern it, but
that does not mean you can go into the Indian territory and
depose Indian nationals without the express authority of the
Hague Convention or the Indian authority.  We have pointed
this out to plaintiffs on numerous occasions.

Several of these witnesses we've disclosed in

13:19:01 1    our 3(b) disclosures back in March.  Plaintiffs didn't serve

13:19:06 2    us with any notices of depositions until less than two weeks

13:19:10 3    before the close of fact discovery when we received all 11.

13:19:13 4    And so they have still not taken any steps to secure these

13:19:16 5    depositions despite our -- again, we've offered Mr. Meda by

13:19:21 6    video.  They said no, we want them in person.  That's their

13:19:25 7    preference.  If that's their preference, Your Honor, they

13:19:27 8    have to take the necessary steps, which they've not still

13:19:31 9    done as we stand here today.

13:19:32 10          And also, today this is the first time that I've

13:19:35 11   heard things like London or other offices or other

13:19:39 12   locations.  So again, this is sort of, you know, news to us.

13:19:44 13   But all of these widths are duplicative and they were on our

13:19:48 14   3(b) disclosures, Your Honor, because they were either

13:19:50 15   involved in the development or formulation or they might

13:19:53 16   have had documents that we were collecting, but we do

13:19:56 17   believe that we have provided a witness who was fully

13:19:59 18   prepared and, you know, for all the questions that

13:20:01 19   plaintiffs wanted to ask with Mr. Snider.

13:20:05 20          THE COURT:  Okay.  Let me ask you this.  You've

13:20:07 21   offered Mr. Meda.  What is the relationship between him and

13:20:11 22   the rest of these folks listed on there letter as technical

13:20:14 23   subject matter?

13:20:17 24          MS. BLOODWORTH:  They have different subject

13:20:17 25   matter -- they have different -- so different

13:20:24 1    responsibilities.  Some of these persons on their letter are

13:20:27 2    fairly low, I would say, on the totum pole of, you know,

13:20:34 3    responsibilities.  None of them -- many of them are not

13:20:37 4    responsible for information.  They might have just performed

13:20:39 5    some work on it.  But Mr. Meda, we proposed because he has

13:20:46 6    information relating to, you know, what was then the Hydrate

13:20:50 7    patent they seem to be curious about.  So we thought that he

13:20:54 8    would be a good witness to answer some of those questions.

13:20:57 9    Now, Mr. Snider did speak with Mr. Meda in preparing for his

13:21:01 10   deposition.

13:21:02 11           THE COURT:  Okay.  And with your offer to

13:21:05 12   produce Mr. Meda, you weren't saying that that deposition --

13:21:10 13   your offer was to have him be deposed via video and you

13:21:14 14   weren't saying that they had to jump through any hoops with

13:21:17 15   respect to the Hague in order to do that deposition, right?

13:21:20 16           MS. BLOODWORTH:  That's correct, Your Honor.

13:21:22 17   Usually if we are going to have a video deposition, we do

13:21:25 18   enter into a stipulation to that effect and allow that

13:21:28 19   deposition to take place.  The court reporter is in the

13:21:33 20   U.S., the questioner is in the U.S. and the witnesses would

13:21:36 21   be voluntary by video and we never withdrew that offer.  We

13:21:39 22   just -- we proposed Dr. Snider to simply try and get the

13:21:43 23   issue resolved, since pretrial conference is pretty soon.

13:21:46 24   So we were trying to move things forward, but we never

13:21:52 25   withdrew our offer for having Mr. Meda deposed by video.

13:21:57 1           THE COURT:  Okay.  And how many hours do they

13:22:03 2  have left in their deposition allotment?

13:22:07 3           MS. BLOODWORTH:  I believe they would have

13:22:09 4  upwards of, you know, dozens of hours, Your Honor.  There's

13:22:13 5  sufficient time left.

13:22:14 6           THE COURT:  Okay.  All right.  Let me hear back

13:22:20 7  from plaintiffs.

13:22:23 8           MS. ROORDA:  Yes, Your Honor.  I believe we

13:22:25 9  have -- I don't have the exact number, but I believe it's

13:22:28 10  close to 50 hours of deposition time out of the 70 that's

13:22:32 11  permitted under the scheduling order.

13:22:34 12           With regard to Mr. Meda's deposition in

13:22:37 13  particular, we've been willing to proceed by having the

13:22:42 14  court reporter and if opposing counsel would want to

13:22:46 15  participate remotely, we would just like to proceed in

13:22:49 16  person as the questioner for his deposition.  And so that

13:22:53 17  would be a compromise that I believe that plaintiffs would

13:22:58 18  be amenable to.  We just feel that in-person depositions

13:23:02 19  allow for you to judge the credibility, to efficiently

13:23:08 20  review documents and there's other benefits associated with

13:23:11 21  having the deposition in person.  And given the relevance to

13:23:14 22  our validity case, we believe it's important to take this

13:23:17 23  deposition in person.

13:23:20 24           THE COURT:  All right.  Stand by for a minute.

13:24:46 25           All right.  Let's go ahead and hear the second

13:24:48  1    dispute and then I'll give you my rulings for both.  This is

13:24:52  2    defendant's dispute.  Go ahead.

13:24:54  3            MS. BLOODWORTH:  Thank you, Your Honor.  This is

13:24:56  4    Shannon Bloodworth again for defendants.  The crux of our

13:24:59  5    dispute stems from plaintiff's production of approximately

13:25:06  6    318,000 some pages within the last two weeks of fact

13:25:09  7    discovery with 123,000 of those pages coming either on the

13:25:14  8    last day of fact discovery or after the close of fact

13:25:17  9    discovery.  More than 50% of their documents came after the

13:25:23 10    substantial completion deadline on September 1st and it's

13:25:27 11    material, Your Honor.  It's material because it goes to the

13:25:31 12    heart of plaintiff's contention that under the post AIA

13:25:37 13    section of 102(b), that they're entitled to the one-year

13:25:41 14    grace period because the label was published within that

13:25:45 15    one-year period.  And plaintiffs have taken the position in

13:25:48 16    front of the patent office that that label was solely the

13:25:51 17    direct or indirect work of named inventor Raoufinia.  And

13:25:59 18    again, that is the standard now under AIA for whether or not

13:26:03 19    they're entitled to the grace period.

13:26:05 20            And if I can direct Your Honor, one thing that

13:26:05 21    is very interesting is that in plaintiff's response to this

13:26:11 22    request, they say well, you know, defendants should have

13:26:14 23    already known this information, because, for example, it was

13:26:17 24    published in the review that the FDA published.  And they

13:26:21 25    cite to Exhibit B in their response where they say that's

13:26:26 1    basically the same information as the information that we

13:26:29 2    received on the last day of fact discovery from former

13:26:33 3    inventor McQuade.  If you look at example 2 -- excuse me,

13:26:37 4    Exhibit 2 attached to our papers, and particularly on the

13:26:41 5    page ending in -- its a bates number main 01237058, what

13:26:50 6    this document is that was produced on the last day of fact

13:26:53 7    discovery for the first time ███████████████████████

13:27:00 8    ████████████████████████████████████████████████████

13:27:04 9    ███████████████████████████████████████████████

13:27:08 10   ██████████████████████████████████████████████

13:27:15 11   ████████████████████████████████████████████████████

13:27:18 12   ████████████████████████████████████

13:27:22 13   ███████████████████████████████████

13:27:24 14            But also, Your Honor, because we didn't get this

13:27:30 15   information until the end of fact discovery, and because we

13:27:33 16   weren't given their witnesses until the middle of November,

13:27:36 17   two weeks after fact discovery to depose, despite them being

13:27:39 18   noticed in the middle of September, we now are in the

13:27:43 19   position of not having this information in our record, which

13:27:47 20   is clearly material and highly material to the actual scope

13:27:52 21   of the prior art in this case.  That type of information,

13:27:58 22   getting, you know, over 1,300 documents from former inventor

13:28:02 23   McQuade on the last today of fact discovery is highly

13:28:07 24   prejudicial and has highly prejudiced our ability to prepare

13:28:11 25   our defenses for which we have the burden, Your Honor.  And

13:28:17 1   plaintiffs may disagree substantively with this argument,

13:28:20 2   but that's frankly, we have a right to get to investigate

13:28:23 3   this argument.  And by failing to produce these documents by

13:28:26 4   the substantial completion deadline, they have robbed us of

13:28:30 5   that opportunity.  It is the very definition of prejudice.

13:28:34 6           So we wrote them a letter right away, asking why

13:28:37 7   you produced so many of your documents at the end of fact

13:28:41 8   discovery.  Again, over 300,000 pages coming in within the

13:28:47 9   last two weeks.  And their response was that our requests

13:28:51 10  were too broad, document production is challenging and we

13:28:56 11  asked for a fast trial date and got it.  I find all three of

13:29:02 12  those excuses insufficient.

13:29:04 13          Your Honor, this isn't just a, you know, oh wow,

13:29:08 14  we're upset about this.  I did actually think at first,

13:29:11 15  perhaps it was just a tactic to try and delay discovery and

13:29:15 16  maybe try and delay the trial date that they never wanted,

13:29:19 17  they always wanted a later trial date.  But then we started

13:29:22 18  to really get into these documents and review them it became

13:29:25 19  very clear that there is a much different story buried in

13:29:30 20  these documents than we have gotten a chance to explore

13:29:33 21  during fact discovery.

13:29:35 22          So we started meeting and conferring with them.

13:29:37 23  Plaintiffs would not join issue.  They simply refused to

13:29:41 24  join issue.  They said we weren't being clear.  Instead of

13:29:44 25  plaintiffs coming to defendants, because we were meeting and

conferring during the end of September and early October, we were meeting and conferring several times to schedule depositions, plaintiffs never told us that they needed an extension because their document production wasn't complete yet.  Plaintiffs should have asked for an extension. Instead on the meet and confers, plaintiffs feigned confusion about what it was the defendants were seeking in order to cure this prejudice that was suffered.

        And we met and conferred and met and conferred and we filed our first letter with Your Honor where they said we still hadn't provided a sufficient proposal.  We had asked for four additional weeks of fact discovery.  We thought that was a sufficient proposal, but we met and conferred again, sent a very specific list and two weeks later, you know, plaintiffs object.  And their opposition letter makes plain the prejudice.  Their argument is, well, we didn't -- we didn't bring these defenses up or these issues up during fact discovery, so we've waived it.  This issue is particularly within the purview of plaintiffs. There's no public information that we would have been able to ascertain to delve into this and dive behind the curtain.

        And then plaintiffs produced 500,000 pages. They did produce a million pages.  480,000 pages were produced with their NDA.  They produced approximately a thousand pages between March and the September 1st

13:31:20 1    substantial complete.  On the substantial completion

13:31:21 2    deadline they produced 550,000 pages on September 1st and

13:31:28 3    318,000 pages in the last two weeks of fact discovery.

13:31:30 4          So, Your Honor, our request is to be able to get

13:31:35 5    the discovery that we believe we would have been entitled to

13:31:38 6    had we received this information timely and we put in a

13:31:41 7    proposal to that effect.  If it's not possible, then we'd

13:31:45 8    request to simply, you know, be able to raise these

13:31:48 9    arguments in our expert reports or amend our pleadings, do

13:31:52 10   what we have to do in order to make sure that we can put

13:31:55 11   these before the Court at trial.

13:31:57 12         THE COURT:  All right.  So let me just ask a

13:32:03 13   couple of questions.  There was some discussion, you know,

13:32:10 14   between the parties about the trial date.  You are now

13:32:13 15   asking to move the trial date, is that right?

13:32:16 16         MS. BLOODWORTH:  Your Honor, if we're able to

13:32:18 17   get the discovery, yes, we would ask to move the trial date,

13:32:21 18   if the Court can accommodate that request.  If the Court

13:32:24 19   decides that we're not entitled to the discovery and we lose

13:32:29 20   this motion, then we would like to maintain our April 1st

13:32:32 21   trial date.

13:32:34 22         THE COURT:  Okay.  So let's walk through

13:32:38 23   specifically what you're asking for.  So you said you

13:32:41 24   want -- I'm looking at page 1 of your letter -- an extension

13:32:47 25   to pursue information directly relevant to which portions of

13:32:50 1   the label are, in fact, prior art.  To make sure I

13:32:54 2   understand, that's related to your -- well, you knew all the

13:33:00 3   time that this label was out there, right, and potentially

13:33:04 4   prior art?  And so your point is that you just found out

13:33:07 5   recently that maybe not all of the label is attributable to

13:33:13 6   the named inventor.  So okay, is that right?

13:33:16 7           MS. BLOODWORTH:  That's correct, Your Honor.

13:33:18 8   And during prosecution, label was brought up in front of the

13:33:21 9   examiner and in response to that Otsuka put in a declaration

13:33:24 10  by Raoufinia, the named inventor, that said all of the

13:33:29 11  information in the label was solely or, you know, was

13:33:31 12  directly or indirectly solely his information.  So that's

13:33:35 13  what we knew.

13:33:36 14          THE COURT:  So your point is that you think you

13:33:39 15  got information late in discovery that shows that that might

13:33:42 16  not be true?

13:33:44 17          MS. BLOODWORTH:  That's correct, Your Honor.

13:33:45 18          THE COURT:  Okay.

13:33:46 19          MS. BLOODWORTH:  In particular, Exhibit 2, which

13:33:49 20  we received after the close of business on the last day of

13:33:51 21  fact discovery.

13:33:52 22          THE COURT:  Okay.  So number two of why you

13:33:56 23  think it's relevant has to do with inventorship.  Have you

13:34:00 24  raised an inventorship defense?

13:34:03 25          MS. BLOODWORTH:  We had not, Your Honor.  It's

13:34:05 1  part and parcel with the one-year -- the one-year grace

13:34:09 2  period, I'll call it.  102(b).

13:34:15 3      THE COURT:  Okay.

13:34:15 4      MS. BLOODWORTH:  Because under 102(b) it has to

13:34:18 5  be, you know, it has to be directly or indirectly from the

13:34:22 6  inventor, but if the conception was not Raoufinia's, it was

13:34:26 7  the FDA's, then that's also not proper inventorship.

13:34:30 8      THE COURT:  Okay.

13:34:30 9      MS. BLOODWORTH:  So those two issues are tied

13:34:32 10 together.

13:34:33 11     THE COURT:  Okay.  And then inequitable conduct,

13:34:35 12 you have not pleaded that, that's right?

13:34:37 13     MS. BLOODWORTH:  We have not pled that.  That

13:34:39 14 would be related to the misstatement.  Right now if we were

13:34:42 15 to plead it, it would be directly related to the statement

13:34:46 16 put in the declaration by Raoufinia ███████████████████

13:34:50 17 ████████████████████████████████████████████████

13:34:54 18 ██████████████████████████████████

13      19 ████████████████████████████████████

13:35:00 20 ████████████

13:35:00 21     THE COURT:  All right.  Let's walk through your

13:35:00 22 specific request.  So subpoenas to former Otsuka employees,

13:35:12 23 e.g. Suresh Mallikarjun, David Goldberger.  What information

13:35:14 24 do you think they have?

13:35:15 25     MS. BLOODWORTH:  ████████████████████████

13:35:17  1  ████████████████████████████████████

13:35:24  2  ████████████████████████  It seems to be that in

13:35:28  3  particular Mr. Goldberger ████████████████████

13:35:32  4  ████████████████████████████████████████

13:35:39  5  ████████████████████████████████  So

13:35:41  6  that's -- the e-mails that we received following October

13:35:47  7  2nd, that seems to be the role that he played from what we

13:35:50  8  can tell.

13:35:50  9          THE COURT:  Okay.  And now Suresh Mallikarjun?

13:35:54 10          MS. BLOODWORTH:  Yes, Suresh Mallikarjun was

13:36:01 11  inventor Ralph Raoufinia's boss, so Raoufinia reported to

13:36:04 12  him. ████████████████████████████████████

13:36:11 13  ████████████████████████████████████

13:36:19 14  ████████████████████████████████████████

13:36:21 15  ████████████████████████████████████

13:36:25 16  ████████████████████████████████

13:36:29 17  ████████████████████████████████████

13:36:33 18  ████████████████████  Mr. Mallikarjun was also an

13:36:37 19  associate professor at BCU with professor Venitz at the

13:36:42 20  time.

13:36:42 21          THE COURT:  So just to make sure I understand,

13:36:45 22  and there's a lot here, so I apologize, Mr. Venitz, you knew

13:36:50 23  about him before you got this document, right?

13:36:52 24          MS. BLOODWORTH:  We knew that he was ████████

13:36:55 25  ████████████████████████████████

13:37:02  1        ██████  We did not know anything about  ████████████████

13:37:04  2  ██████████████  until the end of fact discovery.

13:37:07  3                  THE COURT:  Okay.

13:37:11  4              MS. BLOODWORTH:  And I will point out, Your

13:37:12  5  Honor, the exhibits that plaintiffs attached, C through H in

13:37:15  6  their materials, those are cover e-mails.  We never received

13:37:18  7  any of the attachments to those e-mails until the end of

13:37:22  8  October.

13:37:22  9                  THE COURT:  Okay.

13:37:24 10              MS. BLOODWORTH:  So the cover e-mails, but the

13:37:26 11  attachments may or may not be in their production, but they

13:37:29 12  were not produced until the early part of October.

13:37:33 13                  THE COURT:  Okay.  And then #4 you asked for

13:37:35 14  relief from the scheduling order 70 hours of deposition

13:37:39 15  testimony.  How many hours do you have left?

13:37:42 16              MS. BLOODWORTH:  I don't know, Your Honor, in

13:37:45 17  part, because one of their deponents only spoke in Japanese,

13:37:51 18  so we had to work through an interpreter for those two days.

13:37:56 19  We don't have much time left, I don't think, because that

13:38:00 20  deposition took upwards of 14 or so hours.

13:38:04 21                  THE COURT:  Okay.  And what is this #5, a

13:38:07 22  privilege log to be produced by plaintiffs?

13:38:09 23              MS. BLOODWORTH:  So, Your Honor, we want to see

13:38:11 24  the correspondence and the timing and the names between the

13:38:15 25  Otsuka or Lundbeck employees and the patent prosecutors.

13:38:19  1                    THE COURT:  Okay.  And then subpoenas for

13:38:23  2     documents and depositions including the prosecutors?

13:38:29  3                    MS. BLOODWORTH:  Yes, Your Honor.

13:38:30  4                    THE COURT:  And then #7 asks for plaintiff's

13:38:33  5     complete and full response to defendant's interrogatory

13:38:35  6     numbers 2, 8 and 15.  I don't think I have those.  What are

13:38:39  7     those?

13:38:40  8                    MS. BLOODWORTH:  Those are inventorship

13:38:43  9     interrogatories, Your Honor.  We didn't attach those.  That

13:38:47 10     was our mistake.  They're not in my pile either.

13:38:51 11                    THE COURT:  So they didn't answer them?

13:38:53 12                    MS. BLOODWORTH:  They didn't answer them

13:38:54 13     completely, no.

13:38:56 14                    THE COURT:  What do you mean by that?

13:38:57 15                    MS. BLOODWORTH:  I don't want to misrepresent.

13:39:00 16     I don't have their responses.

13:39:01 17                    THE COURT:  Okay.  All right.  Let's hear from

13:39:03 18     plaintiff.  Go ahead.

13:39:06 19                    MR. BROWNING:  Thank you, Your Honor.  This is

13:39:08 20     Paul Browning of Finnegan for plaintiffs.  There's a lot

13:39:11 21     there, but I'll try and unpack it.  First of all, I think,

13:39:15 22     as Your Honor is aware, is there's been no pleading of

13:39:18 23     inequitable conduct, so clearly under the law in this

13:39:21 24     district they can't pursue inequitable conduct discovery,

13:39:24 25     which seems to be a lot of the discovery directed to

13:39:27 1   attorneys, privilege logs, etc.

13:39:28 2              But even with respect to this alleged

13:39:32 3   inventorship issue, the standard in the case law is for --

13:39:38 4   really this is a motion to reopen fact discovery for

13:39:42 5   extraordinary new discovery.  And the standard is high.  And

13:39:47 6   more diligent pursuit of discovery was impossible.  We cite

13:39:52 7   case law to that issue, the *ChanBond* case.

13:39:52 8              And I've heard a lot of complaints on this call

13:39:54 9   and I've heard them previously about our production, but

13:39:58 10  I've heard almost nothing trying to tie documents produced

13:40:01 11  later in discovery with the specific new discovery that

13:40:06 12  defendants are now seeking.  The only thing -- the only

13:40:10 13  specific thing that counsel mentioned on this call was this

13:40:13 14  exhibit document.  I still don't understand what they're

13:40:17 15  argument is, to be perfectly honest.  I've read their letter

13:40:21 16  a couple times.  I listened today carefully.  I don't

13:40:23 17  understand how that one piece relates to anything.  However,

13:40:28 18  ███████████████████████████████████████████████████

13:40:33 19  ████████████████████████████████.  And that's a document

13:40:37 20  defendants have had for months, they cited in their original

13:40:42 21  invalidity contentions claiming it was prior art, so this

13:40:45 22  argument that they've newly discovered the label was prior

13:40:48 23  art, it's not a new argument.  It's something they've been

13:40:51 24  arguing over and over again.

13:40:52 25              And moreover, when they finally updated their

13:40:55 1   invalidity contentions to add inventorship, it's the only

13:40:59 2   document they cite to, the FDA review, the document they've

13:41:00 3   had for months.  They also cite in passing to the Cognigen

13:41:05 4   report, which is something else they've had for months and

13:41:08 5   months and months.  There's no occasion of any new

13:41:11 6   discovered information that led to a new inventorship

13:41:15 7   disputes.  That's never been identified to us.

13:41:17 8           And again, the standard is very, very high here.

13:41:19 9   You need to show for diligence it was impossible for them to

13:41:23 10  know that this is discovery they'd want to pursue.  We

13:41:26 11  pointed out that they've known about Mallikarjun, Cognigen,

13:41:31 12  Goldberger.  They've known about these individuals for

13:41:33 13  months and months.  It's worth noting that the schedule

13:41:36 14  contemplates the early disclosures of the most relevant

13:41:39 15  materials, file histories, the NDA, conception and reduction

13:41:45 16  to practice documents.  All those materials were produced

13:41:48 17  very early in this litigation and all those issues were out

13:41:52 18  there.  They were available to defendants.  Defendants asked

13:41:55 19  all our parties' witnesses about this theory of

13:41:58 20  inventorship, primarily using the FDA review document

13:42:00 21  because that is their primary document for this argument.

13:42:02 22  And having completed all that discovery, on the eve of

13:42:03 23  expert report due date, they suddenly want expansive new

13:42:11 24  discovery and they can't justify that.  They wouldn't

13:42:12 25  justify it during our meet and confer.  We asked what did

13:42:19 1   you learn that was new that you think justifies this

13:42:22 2   discovery so we can consider it.  They wouldn't answer.

13:42:24 3   They sent a letter to Your Honor and again provided no

13:42:27 4   explanation what's new that we've learned that we couldn't

13:42:30 5   possibly have known before that justifies extraordinary

13:42:33 6   discovery.

13:42:34 7        It's also worth noting, Your Honor, this is

13:42:37 8   incredibly prejudicial to us, not only the burden of this

13:42:39 9   discovery, a lot of this will fall on third parties but a

13:42:42 10  lot on us as well, but also the complete disruption to the

13:42:45 11  schedule.  We had always wanted a little bit more time.

13:42:49 12  It's a terribly tight schedule, I'll admit that, but on the

13:42:51 13  other hand we don't want the trial date moved back months

13:42:56 14  and months and months.  We have -- what's the word for it?

13:43:02 15  The deadline, the regulatory stay -- the expiration of the

13:43:07 16  regulatory stay is in August.  We have a little bit of

13:43:09 17  relief from that in that they have Paragraph 3, some patents

13:43:13 18  that don't expire until around October, but still we need to

13:43:16 19  get this trial accomplished in a timely manner and a

13:43:20 20  proposal of a hundred days of additional fact discovery,

13:43:22 21  there's no way we can accomplish these things.

13:43:27 22       So again, it's a high bar.  We don't think they

13:43:30 23  have justified any of the new discovery they seek.  I don't

13:43:34 24  think there's much point in discussing -- there's a lot of

13:43:37 25  discussion back and forth among the parties.  All I say is

13:43:41 1    we tried our best to resolve this amicably.  We've

13:43:44 2    repeatedly asked what additional depositions, if so just

13:43:48 3    tell us, we'll consider it.  We may very well provide them,

13:43:51 4    but all we got was nothing.  All we got was we just want

13:43:55 5    discovery, we're not telling you what it is.

13:43:57 6            And Your Honor, unless you have any questions, I

13:43:59 7    think I've covered all the issues.

13:44:01 8            THE COURT:  No.  That's helpful.  And everybody

13:44:03 9    is in agreement that because of the Paragraph 3 notice that

13:44:08 10   October is the date we're shooting for?

13:44:13 11           MS. BLOODWORTH:  Your Honor, this is Shannon

13:44:16 12   Bloodworth.  Yes, we have a P 3until October 19th, 2024 on

13:44:22 13   three of the patents.

13:44:23 14           THE COURT:  That's helpful.  By the way, is

13:44:28 15   there an understanding -- has Judge Connolly indicated to

13:44:31 16   any of you that he was or was not going to change the trial

13:44:35 17   date or that he was or was not going to reassign this case

13:44:40 18   to me?  Does anybody have any view on whether anything like

13:44:44 19   that has been said?

13:44:46 20           MS. BLOODWORTH:  Your Honor, at the status

13:44:48 21   conference Judge Connolly set a fast trial date.  He was

13:44:52 22   frustrated with plaintiffs for the delay in the schedule,

13:44:53 23   but then he did come to the parties and ask us to -- whether

13:45:02 24   or not we would agree to proceed before the magistrate

13:45:02 25   judge, I think before you were assigned to this case.  The

13:45:09 1    parties could not reach agreement on that.  We never did get

13:45:13 2    reassigned, but we did get referred to Your Honor for our

13:45:17 3    *Markman* hearing, but we have not heard anything else.

13:45:25 4         THE COURT:  Besides post January, when consent

13:45:29 5    wouldn't be required, Judge Connolly hasn't said anything?

13:45:33 6         MS. BLOODWORTH:  That's correct, Your Honor, to

13:45:34 7    my knowledge.

13:45:35 8         THE COURT:  Okay.  Anything that plaintiff wants

13:45:37 9    to add about that?

13:45:39 10        MR. BROWNING:  No, Your Honor.  I substantially

13:45:42 11   agree other than the comments about the judge being

13:45:45 12   frustrated with us, but certainly I don't recall Judge

13:45:48 13   Connolly saying anything about the date can or cannot move.

13:45:52 14   I don't recall that.  Maybe he said it and I didn't hear it.

13:45:55 15   I don't recall that.  And I don't recall him saying anything

13:45:58 16   about Your Honor being assigned to this case, so I will

13:46:02 17   concede that I believe I've heard chatter that people think

13:46:05 18   that's likely, but I don't have any basis for that.

13:46:08 19        THE COURT:  I wish I could be privy to some of

13:46:11 20   that chatter.  So okay.

13:46:11 21        All right.  So here's what we're going to do.

13:46:15 22   And we'll just take this really slow.  So let's talk about

13:46:21 23   plaintiff's request for these additional depositions.  So

13:46:34 24   with respect to the deponents that are in India, so I'm

13:46:42 25   taking into account the fact that this is going to be a

13:46:51 1   bench trial.  I'm taking into account the fact that

13:46:55 2   infringement of the non CYP patents is not at issue.  I'm

13:47:02 3   taking into consideration that the purported relevant

13:47:07 4   information that these folks have is about secondary

13:47:10 5   considerations in an ANDA case.  And so the probative value

13:47:20 6   I think of the information that these folks have is

13:47:25 7   outweighed by the prejudice of doing in-person, full-length

13:47:28 8   depositions in India.  That said, I'm going to allow a video

13:47:34 9   deposition of Mr. Meda.  That can be a full-length

13:47:39 10  deposition.  And I'm going to allow two-hour depositions of

13:47:44 11  the rest of these folks listed for technical.  I understand

13:47:51 12  that some of the people listed below, those folks have

13:48:00 13  already been deposed and I've listened to the arguments

13:48:03 14  about the remaining people having duplicative information

13:48:05 15  and I'm not going to permit those folks to be deposed.  So

13:48:09 16  we're talking about Meda, Sarbajna, Koluri, Gautam, Sherkar,

13:48:20 17  Jayachandra and that's it.

13:48:27 18          And to be clear, my ruling is based on the

13:48:30 19  Federal Rule of Civil Procedure 26 and I find that this was

13:48:33 20  proportional to the needs of the case.

13:48:33 21          All right.  Turning to defendant's request, I've

13:48:44 22  taken into account the fact that inventorship and

13:48:48 23  inequitable conduct have not been pleaded and that I do

13:48:51 24  think that some of this information could have been asked

13:48:55 25  for earlier in the case.  On the other hand, I'm trying to

13:49:02 1    make the best out of what the situation where we've got

13:49:05 2    extensions of deadlines and plaintiff is getting some extra

13:49:10 3    discovery here after the fact discovery deadline.  And I

13:49:14 4    understand that plaintiffs have contended that it noticed

13:49:17 5    these depositions timely and I have no reason to doubt that.

13:49:20 6    So what I'm going to grant is this.  I'm going to permit

13:49:26 7    defendant to issue subpoenas for depositions to Mallikarjun

13:49:33 8    and Goldberger.  Those depositions can be a maximum of four

13:49:41 9    hours each.  I'm going to permit defendants to issue a

13:49:46 10   subpoena for deposition to Jurgen Venitz, a maximum of four

13:49:53 11   hours each -- so four hours for him.

13:49:58 12            Defendant's request for a privilege log is

13:50:00 13   denied.  Defendant's request for subpoenas for documents and

13:50:04 14   depositions of Finnigan and Coie is denied.  And defendant's

13:50:09 15   request for a complete and full response to defendant's

13:50:12 16   interrogatory numbers 2, 8 and 15, I don't even know what

13:50:15 17   that means, so it's denied.

13:50:18 18            So I think that addresses everything with

13:50:22 19   respect to the specific requests.  I'll ask the parties to

13:50:25 20   meet and confer regarding the trial schedule.  It seems like

13:50:30 21   you all are jammed up.  I can't tell you a hundred percent

13:50:33 22   sitting here today whether or not this case is going to be

13:50:33 23   mine or not.  If it were mine, I would be amenable, sitting

13:50:41 24   here today, to give you a real play on the trial date.  And

13:50:52 25   I can tell you right now I'm looking okay for the spring in

13:50:56 1   that I have a few weeks available.  But after January 2nd I

13:51:03 2   think I'm going to be triple booked for everything going

13:51:05 3   forward.  So the quicker you all can meet and confer about

13:51:10 4   that, the better.  And so talk about whether or not an

13:51:15 5   extension needs to be made.  If you want to request it to

13:51:18 6   Judge Connolly, you can try that and see what he does.  Or

13:51:23 7   you can consent now or we can just see what happens after

13:51:27 8   January 2nd.  So I wish I could give you a better answer

13:51:30 9   than that, but that's all I can say.

13:51:32 10         Does anybody have any questions about how we're

13:51:34 11   going to proceed?

13:51:36 12         MS. BLOODWORTH:  Yes, Your Honor.  This is

13:51:39 13   Shannon Bloodworth again for the defendants.  And apologize

13:51:41 14   for not having it earlier.  Interrogatory 2 is the

13:51:44 15   interrogatory that's conception and reduction to practice.

13:51:46 16   I think I started to say that and pulled up, because I

13:51:49 17   didn't want to misspeak.  They have not answered that except

13:51:52 18   for to say 33(b) or their rule 9(b) disclosures.  We would

13:51:58 19   request that that interrogatory be answered.  It's not

13:52:01 20   prejudicial for them to have to do so.  It should be easy

13:52:02 21   for them to do so, in fact.  But that is why we requested

13:52:08 22   it, because we still don't have an answer on their

13:52:11 23   conception and reduction to practice story this time.

13:52:12 24         THE COURT:  All right.  Let me hear from

13:52:15 25   plaintiffs.  Do you have anything you want to say about that

13:52:18 1    while we're on the phone?

13:52:22 2            MR. BROWNING:  Yes, Your Honor.  There's no

13:52:25 3    argument at all about this issue in the letter for us to

13:52:25 4    even respond to and so it's very hard to get hit out of the

13:52:29 5    blue with arguments.  We certainly responded to all the

13:52:32 6    interrogatories.  And I just -- I think it's unfairly

13:52:36 7    prejudicial to us to blindside us with this on the phone

13:52:40 8    that they never articulated in a meet and confer or in their

13:52:44 9    letter to the Court.  And I just take a position we

13:52:46 10   certainly have responded to all their interrogatories and we

13:52:48 11   believe our responses are sufficient.

13:52:50 12           THE COURT:  All right.  Here's what I'll say.

13:52:52 13   Go back and take a look at your response and talk to each

13:52:54 14   other.  I don't know exactly what it says.  I don't know if

13:52:57 15   it even matters.  And again, sitting here today, I don't

13:53:01 16   have the whole layout of how -- what the law is with respect

13:53:09 17   to how this label is or isn't prior art and so I don't have

13:53:14 18   briefing on it.  And so talk about whether or not it needs

13:53:17 19   to be supplemented in light of what their argument is about

13:53:21 20   the label being 102 prior art.  I don't think I can really

13:53:22 21   say anything more than that, because I really just don't

13:53:27 22   have a record for it.

13:53:28 23           So all right, any other questions?

13:53:30 24           MS. BLOODWORTH:  Your Honor, if you may, again,

13:53:32 25   I'm sorry, I just want to make sure I understand the order

13:53:35 1   for the witnesses, for which witnesses are going to be

13:53:38 2   deposed and when.  I believe I wrote it down correctly, but

13:53:45 3   if I could ask the court to make sure I did, is that okay,

13:53:50 4   before we let you go?  I have that a two-hour deposition, I

13:53:54 5   believe I have Gautam, Koluri, Sherkar, Jayachandra and

13:54:08 6   Dhage?

13:54:08 7            THE COURT:  That sounds like consistent with

13:54:10 8   what I said.

13:54:14 9            MS. BLOODWORTH:  Okay.  And --

13:54:19 10           THE COURT:  Sarbajna.

13:54:22 11           MS. BLOODWORTH:  Okay.  That one I did not hear.

13:54:24 12           THE COURT:  He's got four documents, so I really

13:54:27 13  don't think you need that, but I ordered it.

13:54:32 14           MS. ROORDA:  To clarify, I believe, Shannon, you

13:54:34 15  had mentioned Dhage.

13:54:38 16           THE COURT:  Dhage is denied.

13:54:40 17           MS. ROORDA:  Right.  I just wanted to clarify

13:54:44 18  that.

13:54:44 19           THE COURT:  He's denied.

13:54:45 20           MS. BLOODWORTH:  Thank you.  I apologize.  I

13:54:47 21  must have --

13:54:48 22           THE COURT:  Yeah, go back and take a look at the

13:54:50 23  transcript.

13:54:51 24           MS. BLOODWORTH:  Yes, will do.  Thank you, Your

13:54:52 25  Honor.

13:54:53 1                    THE COURT:  All right.  Anything else?

13:54:55 2                    MR. BROWNING:  Not from us, Your Honor.  Thank

13:54:57 3       you very much.

13:54:58 4                    THE COURT:  All right.  Thanks, everybody.  Take

13:55:00 5       care.  Bye bye.

         6                    (End at 1:55 p.m.)

         7

         8                    ---------------------------------

         9

        10

        11            I hereby certify the foregoing is a true and
                accurate transcript from my stenographic notes in the
        12      proceedings.

        13                              /s/ Stacy M. Ingram
                                       Official Court Reporter
        14                              U.S. District Court

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

**'**

'469 [3] - 5:19, 5:23, 7:12

**/**

/s [1] - 36:13

**0**

01237058 [1] - 17:5

**1**

1 [1] - 20:24
1,300 [1] - 17:22
10 [1] - 12:5
102 [1] - 34:20
102(b [2] - 16:13, 22:4
102(b) [1] - 22:2
11 [1] - 13:3
123,000 [1] - 16:7
14 [1] - 24:20
15 [2] - 25:6, 32:16
17th [2] - 10:8, 12:13
19th [1] - 29:12
1:00 [1] - 1:11
1:55 [1] - 36:6
1st [4] - 16:10, 19:25, 20:2, 20:20

**2**

2 [6] - 17:3, 17:4, 21:19, 25:6, 32:16, 33:14
2011 [1] - 23:16
2023 [1] - 1:11
2024 [1] - 29:12
22-464-CFC-JLH [2] - 1:5, 2:16
26 [1] - 31:19
2nd [3] - 23:7, 33:1, 33:8

**3**

3 [3] - 3:25, 28:17, 29:9
3(b [2] - 13:1, 13:14
3(b)(6 [1] - 12:4
30(b)(1 [2] - 10:18, 11:2

30(b)(6 [5] - 4:7, 7:25, 10:13, 10:17, 11:2
300,000 [1] - 18:8
318,000 [2] - 16:6, 20:3
33(b [1] - 33:18
3until [1] - 29:12

**4**

4 [1] - 24:13
480,000 [1] - 19:23

**5**

5 [1] - 24:21
50 [1] - 15:10
50% [1] - 16:9
500,000 [1] - 19:22
550,000 [1] - 20:2

**7**

7 [1] - 25:4
70 [2] - 15:10, 24:14

**8**

8 [3] - 1:11, 25:6, 32:16
844 [1] - 1:13

**9**

9(b [1] - 33:18

**A**

Abilify [1] - 23:25
ability [1] - 17:24
able [7] - 3:13, 4:7, 9:6, 19:20, 20:4, 20:8, 20:16
absence [1] - 9:21
acceptable [1] - 9:16
accommodate [1] - 20:18
accomplish [1] - 28:21
accomplished [1] - 28:19
according [1] - 6:20
account [3] - 30:25, 31:1, 31:22

accurate [1] - 36:11
acknowledged [1] - 3:25
action [1] - 2:16
active [1] - 7:14
actual [1] - 17:20
add [3] - 5:12, 27:1, 30:9
addition [1] - 11:19
additional [5] - 3:6, 19:12, 28:20, 29:2, 30:23
address [2] - 5:2, 6:5
addresses [1] - 32:18
adjustments [1] - 22:19
admit [1] - 28:12
afternoon [6] - 2:13, 2:18, 2:22, 2:24, 3:4, 3:7
agree [4] - 5:15, 6:8, 29:24, 30:11
agreement [2] - 29:9, 30:1
ahead [4] - 3:6, 15:25, 16:2, 25:18
AIA [2] - 16:12, 16:18
al [2] - 1:4, 1:7
alleged [1] - 26:2
allotment [1] - 15:2
allotted [1] - 8:16
allow [4] - 14:18, 15:19, 31:8, 31:10
allowed [1] - 8:21
allowing [1] - 8:15
almost [1] - 26:10
alternative [1] - 10:2
amenable [3] - 9:8, 15:18, 32:23
amend [1] - 20:9
amended [1] - 4:1
amicably [1] - 29:1
ANDA [5] - 3:17, 3:24, 7:11, 12:9, 31:5
anhydrous [1] - 7:18
answer [7] - 8:1, 14:8, 25:11, 25:12, 28:2, 33:8, 33:22
answered [1] - 33:17, 33:19
apologize [3] - 23:22, 33:13, 35:20
APPEARANCES [2] - 1:19, 2:1
applied [1] - 9:14
April [1] - 20:20
argued [1] - 9:18
arguing [1] - 26:24

argument [12] - 9:20, 9:22, 11:13, 18:1, 18:3, 19:16, 26:15, 26:22, 26:23, 27:21, 34:3, 34:19
arguments [3] - 20:9, 31:13, 34:5
aripiprazole [2] - 7:15, 7:19
art [7] - 17:21, 21:1, 21:4, 26:21, 26:23, 34:17, 34:20
articulated [1] - 34:8
ascertain [1] - 19:21
ASHBY [1] - 1:20
Ashby [1] - 2:19
aside [1] - 6:15
aspects [1] - 7:10
assertion [1] - 8:9
assigned [2] - 29:25, 30:16
assistance [2] - 3:9, 3:13
associate [1] - 23:19
associated [1] - 15:20
attach [1] - 25:9
attached [2] - 17:4, 24:5
attaching [1] - 23:1
attachments [2] - 24:7, 24:11
attempt [1] - 7:17
attempted [1] - 7:18
attempting [1] - 4:12
attorneys [1] - 26:1
attributable [1] - 21:5
August [1] - 28:16
authority [3] - 12:17, 12:22, 12:23
available [5] - 6:25, 27:18, 33:1
aware [1] - 25:22
Axtria [1] - 9:10

**B**

Balick [1] - 2:19
BALICK [2] - 1:21, 2:18
bar [1] - 28:22
based [1] - 31:18
basis [1] - 30:18
bates [1] - 17:5
BCU [2] - 23:13, 23:19
became [1] - 18:18
BEFORE [1] - 1:16
behalf [1] - 3:8

behind [1] - 19:21
below [1] - 31:12
bench [1] - 31:1
benefits [1] - 15:20
best [2] - 29:1, 32:1
better [2] - 33:4, 33:8
between [6] - 13:21, 19:25, 20:14, 23:1, 23:12, 24:24
beyond [1] - 9:8
Bhattad [3] - 11:1, 11:5, 11:11
bit [2] - 28:11, 28:16
blindside [1] - 34:7
BLOODWORTH [39] - 2:6, 4:19, 4:22, 5:17, 10:6, 11:9, 11:16, 13:24, 14:16, 15:3, 16:3, 20:16, 21:7, 21:17, 21:19, 21:25, 22:4, 22:9, 22:13, 22:25, 23:10, 23:24, 24:4, 24:10, 24:16, 24:23, 25:3, 25:8, 25:12, 25:15, 29:11, 29:20, 30:6, 33:12, 34:24, 35:9, 35:11, 35:20, 35:24
Bloodworth [8] - 3:2, 4:11, 4:19, 5:18, 10:7, 16:4, 29:12, 33:13
blue [1] - 34:5
booked [1] - 33:2
boss [1] - 23:11
briefing [2] - 9:21, 34:18
bring [1] - 19:17
broad [1] - 18:10
brought [1] - 21:8
Browning [2] - 2:20, 25:20
BROWNING [5] - 1:24, 25:19, 30:10, 34:2, 36:2
burden [5] - 3:20, 5:10, 6:10, 17:25, 28:8
buried [1] - 18:19
business [1] - 21:20
BY [7] - 1:21, 1:24, 1:24, 2:3, 2:4, 2:6, 2:7
bye [2] - 36:5

**C**

C.A [1] - 1:5

cannot [2] - 12:15, 30:13
capacities [1] - 11:2
care [1] - 36:5
carefully [1] - 26:16
case [27] - 5:6, 5:14, 5:21, 5:24, 6:14, 8:9, 9:10, 9:11, 9:15, 9:17, 9:22, 10:11, 12:5, 12:6, 12:12, 15:22, 17:21, 26:3, 26:7, 29:17, 29:25, 30:16, 31:5, 31:20, 31:25, 32:22
certainly [1] - 30:12, 34:5, 34:10
certify [1] - 36:10
cetera [1] - 10:19
challenging [2] - 5:18, 18:10
ChanBond [1] - 26:7
chance [2] - 5:12, 18:20
change [1] - 29:16
changes [1] - 17:9
characterizations [1] - 10:15
chart [1] - 4:3
chatter [2] - 30:17, 30:20
CHRISTINE [1] - 2:3
Christine [1] - 2:25
cite [5] - 16:25, 26:6, 26:18, 27:2, 27:3
cited [4] - 9:10, 10:10, 12:9, 26:20
citizens [1] - 9:24
civil [1] - 2:16
Civil [7] - 9:13, 9:17, 10:1, 10:3, 12:20, 31:19
claimed [2] - 7:21, 17:11
claiming [1] - 26:21
clarification [1] - 10:8
clarify [2] - 35:14, 35:17
clear [3] - 18:19, 18:24, 31:18
clearly [2] - 17:20, 25:23
clients [1] - 3:3
close [4] - 13:3, 15:10, 16:8, 21:20
CO [1] - 1:4
Cognigen [2] - 27:3, 27:11
COIE [1] - 2:6

Coie [3] - 3:2, 4:11, 32:14
collecting [1] - 13:16
comedy [1] - 12:18
coming [3] - 16:7, 18:8, 18:25
comments [1] - 30:11
complaints [1] - 11:22, 11:25, 26:8
complete [5] - 19:4, 20:1, 25:5, 28:10, 32:15
completed [1] - 27:22
completely [2] - 10:22, 25:13
completion [1] - 16:10, 18:4, 20:1
complying [1] - 9:25
compromise [1] - 15:17
concede [1] - 30:17
conception [4] - 22:6, 27:15, 33:15, 33:23
conduct [6] - 8:21, 9:9, 22:11, 25:23, 25:24, 31:23
confer [4] - 27:25, 32:20, 33:3, 34:8
conference [2] - 14:23, 29:21
conferred [4] - 10:14, 19:9, 19:14
conferring [3] - 18:22, 19:1, 19:2
confers [1] - 19:6
confusion [1] - 19:7
Connolly [5] - 29:15, 29:21, 30:5, 30:13, 33:6
consent [2] - 30:4, 33:7
consider [2] - 28:2, 29:3
consideration [1] - 31:3
considerations [2] - 12:12, 31:5
considered [1] - 9:12
considering [1] - 9:8
consistent [1] - 35:7
consulting [1] - 23:24
contemplates [1] - 27:14
contended [1] - 32:4
contention [1] - 16:12
contentions [5] - 10:9, 11:17, 12:10, 26:21, 27:1

contesting [2] - 3:19, 5:5
continue [1] - 4:21
CONTINUED [1] - 2:1
contrary [2] - 17:13, 22:16
Convention [4] - 9:12, 9:19, 10:2, 12:23
coordinated [1] - 23:3
correct [4] - 14:16, 21:7, 21:17, 30:6
correctly [1] - 35:2
correspondence [4] - 22:17, 22:25, 23:15, 24:24
COTTRELL [1] - 2:4
Cottrell [1] - 3:1
Counsel [2] - 1:25, 2:8
counsel [2] - 15:14, 26:13
couple [3] - 10:7, 20:13, 26:16
court [5] - 9:2, 9:20, 14:19, 15:14, 35:3
COURT [57] - 1:1, 2:13, 2:22, 3:4, 4:16, 4:20, 5:3, 5:11, 5:25, 6:11, 7:3, 8:4, 8:13, 8:18, 10:4, 11:6, 11:15, 13:20, 14:11, 15:1, 15:6, 15:24, 20:12, 20:22, 21:14, 21:18, 21:22, 22:3, 22:8, 22:11, 22:21, 23:9, 23:21, 24:3, 24:9, 24:13, 24:21, 25:1, 25:4, 25:11, 25:14, 25:17, 29:8, 29:14, 30:4, 30:8, 30:19, 33:24, 34:12, 35:7, 35:10, 35:12, 35:16, 35:19, 35:22, 36:1, 36:4
Court [11] - 1:17, 9:12, 9:15, 9:23, 12:2, 20:11, 20:18, 34:9, 36:13, 36:14
Court's [1] - 3:9
cover [3] - 4:7, 24:6, 24:10
covered [1] - 29:7
credibility [1] - 15:19
critical [1] - 23:16
crux [1] - 16:4
cure [1] - 19:8
curious [1] - 14:7
curtain [1] - 19:21

custodial [1] - 4:4
CYP [9] - 5:22, 6:3, 6:17, 6:19, 11:1, 23:18, 24:2, 31:2

### D

Dan [1] - 11:21
date [14] - 18:11, 18:16, 18:17, 20:14, 20:15, 20:17, 20:21, 27:23, 28:13, 29:10, 29:17, 29:21, 30:13, 32:24
David [3] - 10:19, 11:13, 22:23
days [2] - 24:18, 28:20
deadline [5] - 16:10, 18:4, 20:2, 28:15, 32:3
deadlines [1] - 32:2
deals [1] - 7:13
DEALY [1] - 2:3
December [1] - 1:11
decides [1] - 20:19
declaration [2] - 21:9, 22:16
defendant [2] - 6:13, 32:7
Defendant [1] - 2:8
defendant's [11] - 3:17, 4:7, 7:16, 9:21, 16:2, 25:5, 31:21, 32:12, 32:13, 32:14, 32:15
Defendants [1] - 1:8
defendants [30] - 2:23, 3:18, 3:19, 3:25, 4:10, 5:5, 5:8, 5:13, 5:18, 6:7, 6:21, 7:10, 7:25, 8:7, 8:20, 9:4, 9:6, 9:18, 10:5, 10:7, 16:4, 16:22, 18:25, 19:7, 26:12, 26:20, 27:18, 32:9, 33:13
defense [3] - 5:9, 6:7, 21:24
defenses [2] - 17:25, 19:17
definition [1] - 18:5
DELAWARE [1] - 1:1
Delaware [1] - 1:14
delay [3] - 18:15, 18:16, 29:22
delve [1] - 19:21
denied [5] - 32:13, 32:14, 32:17, 35:16,

35:19
deponents [2] - 24:17, 30:24
depose [5] - 8:1, 10:21, 11:1, 12:22, 17:17
deposed [9] - 11:8, 11:12, 11:14, 11:20, 14:13, 14:25, 31:13, 31:15, 35:2
deposition [21] - 8:16, 11:19, 11:25, 12:19, 14:10, 14:12, 14:15, 14:17, 14:19, 15:2, 15:10, 15:12, 15:16, 15:21, 15:23, 24:14, 24:20, 31:9, 31:10, 32:10, 35:4
depositions [29] - 3:6, 3:10, 3:14, 3:22, 4:8, 4:25, 6:2, 8:13, 8:21, 9:1, 9:7, 9:9, 9:14, 9:18, 10:1, 12:16, 13:2, 13:5, 15:18, 19:3, 25:2, 29:2, 30:23, 31:8, 31:10, 32:5, 32:7, 32:8, 32:14
design [1] - 8:8
designated [1] - 7:25
despite [3] - 11:17, 13:5, 17:17
determination [1] - 9:16
develop [1] - 7:17
development [3] - 7:11, 7:24, 13:15
Dhage [5] - 7:7, 11:3, 35:6, 35:15, 35:16
different [6] - 7:10, 13:24, 13:25, 18:19, 23:25
diligence [1] - 27:9
diligent [1] - 26:6
direct [3] - 6:6, 16:17, 16:20
directed [1] - 25:25
directly [8] - 7:24, 10:21, 11:4, 17:12, 20:25, 21:12, 22:5, 22:15
disagree [2] - 10:15, 18:1
disclosed [1] - 12:25
disclosures [7] - 4:1, 12:4, 13:1, 13:14, 27:14, 33:18
discoverable [2] - 3:12, 12:4

**discovered** [2] - 26:22, 27:6
**discovery** [44] - 2:14, 4:2, 7:22, 10:9, 13:3, 16:7, 16:8, 16:9, 17:2, 17:7, 17:15, 17:17, 17:23, 18:8, 18:15, 18:21, 19:12, 19:18, 20:3, 20:5, 20:17, 20:19, 21:15, 21:21, 23:15, 24:2, 25:24, 25:25, 26:4, 26:5, 26:6, 26:11, 27:10, 27:22, 27:24, 28:2, 28:6, 28:9, 28:20, 28:23, 29:5, 32:3
**discussed** [1] - 10:20
**discussing** [1] - 28:24
**discussion** [3] - 9:11, 20:13, 28:25
**dismissed** [1] - 12:7
**dispute** [7] - 2:15, 3:11, 4:6, 11:18, 16:1, 16:2, 16:5
**disputes** [1] - 27:7
**disruption** [1] - 28:10
**DISTRICT** [2] - 1:1, 1:1
**district** [2] - 9:20, 25:24
**District** [2] - 1:17, 36:14
**dive** [1] - 19:21
**document** [11] - 17:6, 18:10, 19:4, 23:23, 26:14, 26:19, 27:2, 27:20, 27:21
**documents** [17] - 4:4, 8:2, 10:10, 12:8, 13:16, 15:20, 16:9, 17:22, 18:3, 18:7, 18:18, 18:20, 25:2, 26:10, 27:16, 32:13, 35:12
**done** [2] - 8:14, 13:9
**dose** [1] - 22:18
**doses** [1] - 17:11
**dosing** [3] - 6:25, 23:18, 24:2
**doubt** [1] - 32:5
**down** [1] - 35:2
**dozens** [1] - 15:4
**Dr** [1] - 14:22
**dropped** [4] - 4:12, 5:8, 5:15, 6:7
**due** [2] - 9:20, 27:23
**DUNNER** [1] - 1:23
**duplicative** [5] -

10:22, 11:11, 11:13, 13:13, 31:14
**during** [5] - 18:21, 19:1, 19:18, 21:8, 27:25

## E

**e-mails** [5] - 23:6, 23:12, 24:6, 24:7, 24:10
**e.g** [1] - 22:23
**early** [4] - 19:1, 24:12, 27:14, 27:17
**easy** [1] - 33:20
**effect** [2] - 14:18, 20:7
**efficiently** [1] - 15:19
**efforts** [1] - 23:4
**either** [3] - 13:14, 16:7, 25:10
**EMFs** [1] - 12:9
**employees** [2] - 22:22, 24:25
**end** [5] - 17:15, 18:7, 19:1, 24:2, 24:7
**End** [1] - 36:6
**ending** [1] - 17:5
**enter** [1] - 14:18
**entitled** [4] - 16:13, 16:19, 20:5, 20:19
**ESQ** [7] - 1:21, 1:24, 1:24, 2:3, 2:4, 2:6, 2:7
**et** [3] - 1:4, 1:7, 10:18
**etc** [1] - 26:1
**eve** [1] - 27:22
**events** [1] - 8:3
**exact** [1] - 15:9
**exactly** [1] - 34:14
**examiner** [1] - 21:9
**example** [6] - 6:23, 9:6, 11:1, 16:23, 17:3, 23:4
**except** [1] - 33:17
**excuse** [2] - 4:9, 17:3
**excuses** [1] - 18:12
**Exhibit** [3] - 16:25, 17:4, 21:19
**exhibit** [1] - 26:14
**exhibits** [1] - 24:5
**expansive** [1] - 27:23
**expecting** [1] - 5:20
**expert** [2] - 20:9, 27:23
**expiration** [1] - 28:15
**expire** [1] - 28:18
**explained** [2] - 3:10, 3:17

**explanation** [1] - 28:4
**explore** [1] - 18:20
**express** [1] - 12:22
**extension** [4] - 19:4, 19:5, 20:24, 33:5
**extensions** [1] - 32:2
**extra** [1] - 32:2
**extraordinary** [2] - 26:5, 28:5

## F

**faced** [1] - 9:24
**fact** [30] - 3:11, 7:16, 7:22, 9:15, 12:18, 13:3, 16:6, 16:8, 17:2, 17:6, 17:15, 17:17, 17:23, 18:7, 18:21, 19:12, 19:18, 20:3, 21:1, 21:21, 23:15, 24:2, 26:4, 28:20, 30:25, 31:1, 31:22, 32:3, 33:21
**fact-specific** [1] - 9:15
**failed** [1] - 8:7
**failing** [1] - 18:3
**fair** [2] - 8:10, 8:11
**fairly** [1] - 14:2
**fall** [1] - 28:9
**far** [1] - 9:9
**FARABOW** [1] - 1:23
**fast** [2] - 18:11, 29:21
**FDA** [9] - 16:24, 17:11, 22:17, 22:19, 23:1, 23:2, 26:19, 27:2, 27:20
**FDA's** [2] - 17:9, 22:7
**Federal** [6] - 9:13, 9:17, 9:25, 10:3, 12:20, 31:19
**feigned** [1] - 19:6
**few** [1] - 33:1
**file** [1] - 27:15
**filed** [1] - 19:10
**finally** [1] - 26:25
**financial** [3] - 6:23, 7:7, 10:19
**fine** [1] - 4:16
**FINGER** [1] - 2:3
**Finger** [1] - 2:25
**fINNEGAN** [1] - 1:23
**Finnegan** [2] - 2:20, 25:20
**Finnigan** [1] - 32:14
**firm** [2] - 2:21, 4:11
**first** [11] - 7:16, 8:25, 10:8, 10:12, 12:12, 13:10, 17:7, 18:14,

19:10, 23:14, 25:21
**folks** [8] - 8:21, 11:7, 13:22, 31:4, 31:6, 31:11, 31:12, 31:15
**followed** [2] - 7:1, 9:13
**following** [1] - 23:6
**footnote** [1] - 9:22
**FOR** [1] - 1:1
**foregoing** [1] - 36:10
**form** [2] - 7:14, 7:18
**former** [4] - 17:2, 17:22, 22:22, 23:5
**formulation** [3] - 7:21, 12:6, 13:15
**forth** [1] - 28:25
**forward** [3] - 3:22, 14:24, 33:3
**four** [5] - 19:12, 32:8, 32:10, 32:11, 35:12
**frankly** [1] - 18:2
**Fred** [1] - 3:1
**FREDERICK** [1] - 2:4
**friday** [1] - 1:11
**front** [2] - 16:16, 21:8
**frustrated** [2] - 29:22, 30:12
**full** [4] - 25:5, 31:7, 31:9, 32:15
**full-length** [2] - 31:7, 31:9
**fully** [1] - 13:17

## G

**gap** [1] - 7:19
**GARRETT** [1] - 1:23
**Gautam** [2] - 31:16, 35:5
**GEDDES** [1] - 1:20
**Geddes** [1] - 2:19
**generic** [1] - 7:17
**gentleman** [1] - 10:19
**given** [2] - 15:21, 17:16
**global** [1] - 11:3
**Goldberger** [3] - 22:23, 27:12, 32:8
**goldberger** [1] - 23:3
**govern** [1] - 12:20
**grace** [3] - 16:14, 16:19, 22:1
**grant** [1] - 32:6
**guess** [3] - 3:5, 5:22, 8:25

## H

**Hague** [6] - 9:12, 9:19, 10:2, 12:18, 12:23, 14:15
**Hall** [3] - 2:14, 4:16, 4:20
**HALL** [1] - 1:16
**hand** [4] - 17:8, 17:9, 28:13, 31:25
**hard** [1] - 34:4
**HAYNES** [2] - 2:3, 2:24
**Haynes** [1] - 2:25
**head** [1] - 11:2
**hear** [9] - 6:15, 10:4, 11:25, 15:6, 15:25, 25:17, 30:14, 33:24, 35:11
**heard** [8] - 8:5, 10:13, 10:20, 11:22, 12:8, 13:11, 26:8, 26:9, 26:10, 30:3, 30:17
**hearing** [4] - 4:13, 4:21, 6:13, 30:3
**heart** [1] - 16:12
**helpful** [2] - 29:8, 29:14
**HENDERSON** [1] - 1:23
**hereby** [1] - 36:10
**high** [3] - 26:5, 27:8, 28:22
**highly** [3] - 17:20, 17:23, 17:24
**histories** [1] - 27:15
**hit** [1] - 34:4
**honest** [1] - 26:15
**Honor** [53] - 2:18, 2:24, 3:7, 4:23, 4:24, 5:17, 5:22, 6:5, 8:11, 8:17, 8:24, 10:6, 11:9, 12:15, 13:7, 13:14, 14:16, 15:4, 15:8, 16:3, 16:11, 16:20, 17:10, 17:14, 17:25, 18:13, 19:10, 20:4, 20:16, 21:7, 21:17, 21:25, 24:5, 24:16, 24:23, 25:3, 25:9, 25:19, 25:22, 28:3, 28:7, 29:6, 29:11, 29:20, 30:2, 30:6, 30:10, 30:16, 33:12, 34:2, 34:24, 35:25, 36:2

**HONORABLE** [1] - 1:16
**hoops** [1] - 14:14
**host** [1] - 9:7
**hour** [2] - 31:10, 35:4
**hours** [10] - 8:15, 15:1, 15:4, 15:10, 24:14, 24:15, 24:20, 32:9, 32:11
**hundred** [2] - 28:20, 32:21
**Hydrate** [4] - 7:13, 7:21, 12:7, 14:6
**hydrate** [1] - 5:23

**I**

**identical** [1] - 26:18
**identified** [2] - 3:23, 27:7
**III** [1] - 2:4
**Imperatore** [1] - 3:3
**important** [1] - 15:22
**imposed** [1] - 11:22
**impossible** [2] - 26:6, 27:9
**IN** [1] - 1:1
**in-person** [2] - 15:18, 31:7
**included** [1] - 9:22
**including** [1] - 25:2
**incredibly** [1] - 28:8
**IND** [1] - 23:25
**India** [10] - 8:19, 8:22, 9:5, 9:9, 9:10, 9:14, 12:15, 12:16, 30:24, 31:8
**Indian** [7] - 8:22, 9:24, 12:16, 12:17, 12:21, 12:22, 12:23
**indicated** [1] - 29:15
**indirect** [1] - 16:17
**indirectly** [2] - 21:12, 22:5
**individuals** [4] - 6:16, 7:23, 11:23, 27:12
**inequitable** [4] - 22:11, 25:23, 25:24, 31:23
**information** [35] - 3:12, 3:16, 3:24, 4:5, 6:16, 6:22, 7:9, 7:15, 8:6, 10:11, 10:19, 10:22, 12:5, 12:11, 14:4, 14:6, 16:23, 17:1, 17:11, 17:15, 17:19, 17:21, 19:20, 20:6, 20:25,

21:11, 21:12, 21:15, 22:23, 27:6, 31:4, 31:6, 31:14, 31:24
**infringement** [19] - 3:20, 3:21, 5:5, 5:6, 5:9, 5:10, 5:14, 5:16, 5:19, 5:21, 6:3, 6:6, 6:8, 6:10, 6:14, 6:16, 6:18, 12:7, 31:2
**infringing** [1] - 7:20
**Ingram** [1] - 36:13
**ingredient** [1] - 7:14
**initial** [1] - 4:1
**injectables** [1] - 11:3
**inner** [1] - 7:15
**input** [1] - 23:17
**inquiry** [1] - 9:15
**instead** [2] - 18:24, 19:6
**insufficient** [1] - 18:12
**interesting** [1] - 16:21
**interpreter** [1] - 24:18
**interrogator** [1] - 11:17
**interrogatories** [3] - 25:9, 34:6, 34:10
**interrogatory** [5] - 25:5, 32:16, 33:14, 33:15, 33:19
**interrupting** [1] - 8:4
**interruption** [1] - 4:15
**invalid** [1] - 8:10
**invalidity** [2] - 26:21, 27:1
**inventor** [9] - 16:17, 17:3, 17:22, 21:6, 21:10, 22:6, 23:5, 23:11
**inventors** [1] - 23:16
**inventorship** [9] - 21:23, 21:24, 22:7, 25:8, 26:3, 27:1, 27:6, 27:20, 31:22
**investigate** [1] - 18:2
**involved** [2] - 7:24, 13:15
**involvement** [1] - 24:1
**issue** [14] - 5:16, 8:19, 10:14, 14:23, 17:10, 18:23, 18:24, 19:19, 26:3, 26:7, 31:2, 32:7, 32:9, 34:3
**issues** [5] - 10:24, 19:18, 22:9, 27:17, 29:7

**J**

**jammed** [1] - 32:21
**January** [3] - 30:4, 33:1, 33:8
**Japanese** [1] - 24:17
**Jayachandra** [2] - 31:17, 35:5
**JEANETTE** [1] - 1:24
**Jeanette** [1] - 2:20
**Jeannette** [2] - 3:8, 4:10
**Jen** [1] - 2:14
**JENNIFER** [1] - 1:16
**join** [3] - 4:12, 18:23, 18:24
**joined** [1] - 4:23
**judge** [3] - 15:19, 29:25, 30:11
**Judge** [8] - 1:17, 4:16, 4:20, 29:15, 29:21, 30:5, 30:12, 33:6
**jump** [1] - 14:14
**Jurgen** [2] - 23:14, 32:10
**justified** [1] - 28:23
**justifies** [2] - 28:1, 28:5
**justify** [2] - 27:24, 27:25

**K**

**Katie** [3] - 7:7, 10:20, 11:12
**key** [1] - 17:10
**King** [1] - 1:13
**knowledge** [1] - 30:7
**known** [4] - 16:23, 27:11, 27:12, 28:5
**Koluri** [2] - 31:16, 35:5

**L**

**label** [11] - 16:14, 16:16, 17:12, 21:1, 21:3, 21:5, 21:8, 21:11, 26:22, 34:17, 34:20
**labeling** [4] - 6:21, 10:25, 17:8, 23:1
**labels** [1] - 7:1
**LABORATORIES** [1] - 1:7
**last** [9] - 16:6, 16:8,

17:2, 17:6, 17:23, 18:9, 20:3, 21:20, 23:14
**late** [1] - 21:15
**law** [5] - 8:23, 25:23, 26:3, 26:7, 34:16
**layout** [1] - 34:16
**LAYTON** [1] - 2:3
**Layton** [1] - 2:25
**learn** [1] - 28:1
**learned** [1] - 28:4
**least** [1] - 9:1
**led** [1] - 27:6
**left** [5] - 15:2, 15:5, 17:8, 24:15, 24:19
**left-hand** [1] - 17:8
**length** [2] - 31:7, 31:9
**less** [1] - 13:2
**letter** [15] - 4:3, 10:12, 11:8, 11:10, 12:2, 13:22, 14:1, 18:6, 19:10, 19:16, 20:24, 26:15, 28:3, 34:3, 34:9
**letters** [1] - 9:11
**light** [1] - 34:19
**likely** [1] - 30:18
**LIMITED** [1] - 1:7
**line** [4] - 2:14, 2:17, 2:23, 3:1
**list** [2] - 11:7, 19:14
**listed** [4] - 7:5, 13:22, 31:11, 31:12
**listened** [2] - 26:16, 31:13
**litigation** [1] - 27:17
**LLP** [2] - 1:23, 2:6
**location** [1] - 9:4
**locations** [2] - 9:8, 13:12
**log** [2] - 24:22, 32:12
**logs** [1] - 26:1
**London** [2] - 9:7, 13:11
**look** [3] - 17:3, 34:13, 35:22
**looked** [1] - 6:23
**looking** [2] - 20:24, 32:25
**lose** [1] - 20:19
**low** [1] - 14:2
**LTD** [1] - 1:4
**Lundbeck** [1] - 24:25

**M**

**magistrate** [1] - 29:24
**mails** [5] - 23:6,

23:12, 24:6, 24:7, 24:10
**main** [1] - 17:5
**maintain** [1] - 20:20
**Maintena** [1] - 23:25
**majority** [1] - 4:4
**Mallikarjun** [8] - 22:23, 23:9, 23:10, 23:12, 23:17, 23:18, 27:11, 32:7
**manner** [1] - 28:19
**March** [3] - 13:1, 19:25, 23:16
**MARIA** [1] - 2:7
**Maria** [2] - 3:2, 4:10
**market** [1] - 6:25
**marketing** [1] - 10:18
**Markman** [1] - 30:3
**material** [4] - 16:11, 17:20
**materials** [3] - 24:6, 27:15, 27:16
**matter** [3] - 3:16, 13:23, 13:25
**matters** [1] - 34:15
**maximum** [2] - 32:8, 32:10
**McQuade** [3] - 17:3, 17:23, 23:5
**mean** [4] - 8:20, 8:22, 12:21, 25:14
**means** [1] - 32:17
**Meda** [9] - 11:19, 13:5, 13:21, 14:5, 14:9, 14:12, 14:25, 31:9, 31:16
**Meda's** [1] - 15:12
**meet** [5] - 19:6, 27:25, 32:20, 33:3, 34:8
**meeting** [3] - 18:22, 18:25, 19:2
**meetings** [1] - 23:2
**mentioned** [2] - 26:13, 35:15
**merely** [1] - 10:2
**met** [4] - 10:14, 19:9, 19:13
**middle** [2] - 17:16, 17:18
**might** [3] - 13:15, 14:4, 21:15
**million** [1] - 19:23
**mine** [2] - 32:23
**minute** [1] - 15:24
**misrepresent** [1] - 25:15
**misspeak** [1] - 33:17
**misstatement** [1] -

22:14
**mistake** [1] - 25:10
**Mitchell** [3] - 10:20, 10:21, 11:13
**Mitchell's** [1] - 10:23
**moment** [2] - 5:1, 6:4
**months** [10] - 26:20, 27:3, 27:4, 27:5, 27:13, 28:13, 28:14
**moreover** [1] - 26:25
**most** [1] - 27:14
**motion** [2] - 20:20, 26:4
**move** [5] - 3:21, 14:24, 20:15, 20:17, 30:13
**moved** [1] - 28:13
**MR** [4] - 2:18, 30:10, 34:2, 36:2
**MS** [52] - 2:24, 3:7, 4:9, 4:19, 4:22, 4:24, 5:8, 5:17, 6:4, 6:18, 7:6, 8:11, 8:17, 8:24, 10:6, 11:9, 11:16, 13:24, 14:16, 15:3, 15:8, 16:3, 20:16, 21:7, 21:17, 21:19, 21:25, 22:4, 22:9, 22:13, 22:25, 23:10, 23:24, 24:4, 24:10, 24:16, 24:23, 25:3, 25:8, 25:12, 25:15, 29:11, 29:20, 30:6, 33:12, 34:24, 35:9, 35:11, 35:14, 35:17, 35:20, 35:24
**must** [1] - 35:21
**Mylan** [1] - 2:15
**MYLAN** [1] - 1:7

**N**

**named** [3] - 16:17, 21:6, 21:10
**names** [1] - 24:24
**nationals** [2] - 12:16, 12:22
**NDA** [2] - 19:24, 27:15
**necessary** [1] - 13:8
**need** [4] - 22:18, 27:9, 28:18, 35:13
**needed** [2] - 11:24, 19:3
**needs** [3] - 31:20, 33:5, 34:18
**never** [10] - 12:8, 14:21, 14:24, 17:10,

18:16, 19:3, 24:6, 27:7, 30:1, 34:8
**new** [10] - 10:11, 26:5, 26:11, 26:23, 27:5, 27:6, 27:23, 28:1, 28:4, 28:23
**newly** [1] - 26:22
**news** [1] - 13:12
**Nitin** [2] - 11:1, 11:11
**non** [7] - 3:20, 3:21, 5:9, 6:6, 6:8, 12:7, 31:2
**non-infringement** [6] - 3:20, 3:21, 5:9, 6:6, 6:8, 12:7
**none** [2] - 12:8, 14:3
**note** [2] - 6:5, 8:25
**noted** [2] - 7:23, 10:1
**notes** [1] - 36:11
**nothing** [2] - 26:10, 29:4
**notice** [2] - 3:9, 29:9
**noticed** [6] - 3:10, 3:12, 4:5, 4:25, 17:18, 32:4
**notices** [1] - 13:2
**noting** [2] - 27:13, 28:7
**November** [3] - 10:8, 12:13, 17:16
**number** [5] - 2:16, 8:15, 15:9, 17:5, 21:22
**numbers** [1] - 25:6, 32:16
**numerous** [1] - 12:24

**O**

**object** [1] - 19:15
**obtaining** [1] - 3:10
**occasion** [1] - 27:5
**occasions** [1] - 12:24
**October** [7] - 19:1, 23:6, 24:8, 24:12, 28:18, 29:10, 29:12
**OF** [1] - 1:1
**offer** [4] - 14:11, 14:13, 14:21, 14:25
**offered** [2] - 13:5, 13:21
**offering** [1] - 11:19
**office** [4] - 3:1, 9:7, 16:16, 17:13
**offices** [1] - 13:11
**Official** [1] - 36:13
**one** [11] - 5:19, 6:4, 16:13, 16:15, 16:20,

22:1, 23:3, 24:17, 26:17, 35:11
**one-year** [4] - 16:13, 16:15, 22:1
**ones** [2] - 7:4
**opportunity** [2] - 8:1, 18:5
**opposing** [1] - 15:14
**opposition** [1] - 19:15
**option** [1] - 9:5
**order** [7] - 11:18, 14:15, 15:11, 19:8, 20:10, 24:14, 34:25
**ordered** [1] - 35:13
**original** [1] - 26:20
**OTSUKA** [1] - 1:3
**Otsuka** [6] - 2:15, 21:9, 22:18, 22:22, 23:1, 24:25
**Otsuka's** [1] - 17:8
**outset** [1] - 5:4
**outweighed** [1] - 31:7

**P**

**P.A** [2] - 1:20, 2:3
**p.m** [2] - 1:11, 36:6
**page** [4] - 17:5, 20:24, 26:18
**pages** [9] - 16:6, 16:7, 18:8, 19:22, 19:23, 19:25, 20:2, 20:3
**papers** [1] - 17:4
**paragraph** [1] - 3:25
**Paragraph** [2] - 28:17, 29:9
**parcel** [1] - 22:1
**part** [4] - 6:9, 22:1, 24:12, 24:17
**participate** [2] - 9:3, 15:15
**particular** [4] - 9:15, 15:13, 21:19, 23:3
**particularly** [2] - 17:4, 19:19
**parties** [7] - 9:10, 20:14, 28:9, 28:25, 29:23, 30:1, 32:19
**parties'** [1] - 27:19
**party** [1] - 23:13
**passing** [1] - 27:3
**Patent** [2] - 5:19, 7:12
**patent** [9] - 5:23, 5:24, 7:13, 7:22, 12:8, 14:7, 16:16, 17:13, 24:25
**Patents** [4] - 5:22, 6:3, 6:17, 6:19

**patents** [8] - 6:20, 8:9, 11:1, 12:5, 12:6, 28:17, 29:13, 31:2
**patient** [1] - 6:24
**patients** [1] - 23:18
**Paul** [2] - 2:20, 25:20
**PAUL** [1] - 1:24
**pause** [1] - 4:17
**people** [4] - 8:6, 30:17, 31:12, 31:14
**percent** [1] - 32:21
**perfectly** [1] - 26:15
**performed** [1] - 14:4
**perhaps** [1] - 18:15
**period** [6] - 8:3, 16:14, 16:15, 16:19, 22:2, 23:16
**PERKINS** [1] - 2:6
**Perkins** [2] - 3:2, 4:11
**permissive** [1] - 10:3
**permit** [3] - 31:15, 32:6, 32:9
**permitted** [2] - 9:23, 15:11
**person** [10] - 3:14, 8:19, 9:1, 9:2, 13:6, 15:16, 15:18, 15:21, 15:23, 31:7
**persons** [3] - 11:10, 14:1, 23:4
**PHARAMCEUTICAL** [1] - 1:3
**pharmaceutical** [1] - 7:14
**phone** [3] - 6:12, 34:1, 34:7
**piece** [2] - 6:2, 26:17
**pile** [1] - 25:10
**place** [2] - 12:19, 14:19
**plain** [1] - 19:16
**Plaintiff** [1] - 1:25
**plaintiff** [3] - 25:18, 30:8, 32:2
**plaintiff's** [10] - 3:6, 6:9, 10:12, 12:1, 12:10, 16:5, 16:12, 16:21, 25:4, 30:23
**plaintiffs** [32] - 2:17, 2:19, 3:8, 3:9, 3:21, 4:21, 5:20, 6:1, 10:10, 10:15, 11:22, 12:24, 13:1, 13:19, 15:7, 15:17, 16:15, 18:1, 18:23, 18:25, 19:3, 19:5, 19:6, 19:15, 19:19, 19:22, 24:5, 24:22, 25:20,

29:22, 32:4, 33:25
**Plaintiffs** [1] - 1:5
**plaintiffs's** [1] - 7:21
**play** [1] - 32:24
**played** [1] - 23:7
**plead** [1] - 22:15
**pleaded** [2] - 22:12, 31:23
**pleading** [1] - 25:22
**pleadings** [1] - 20:9
**pled** [1] - 22:13
**point** [4] - 21:4, 21:14, 24:4, 28:24
**pointed** [2] - 12:23, 27:11
**pointing** [1] - 8:20
**points** [1] - 10:8
**pole** [1] - 14:2
**polymorphic** [1] - 7:14
**populations** [1] - 6:24
**portions** [1] - 20:25
**position** [4] - 6:9, 16:15, 17:19, 34:9
**positions** [1] - 3:18
**possible** [1] - 20:7
**possibly** [1] - 28:5
**post** [2] - 16:12, 30:4
**potentially** [1] - 21:3
**practice** [4] - 7:2, 27:16, 33:15, 33:23
**preference** [2] - 13:7
**prejudice** [4] - 18:5, 19:8, 19:16, 31:7
**prejudiced** [1] - 17:24
**prejudicial** [4] - 17:24, 28:8, 33:20, 34:7
**prepare** [2] - 11:20, 17:24
**prepared** [2] - 11:24, 13:18
**preparing** [1] - 14:9
**present** [1] - 9:2
**Preston** [1] - 3:3
**pretrial** [1] - 14:23
**pretty** [1] - 14:23
**previously** [1] - 26:9
**primarily** [1] - 27:20
**primary** [1] - 27:21
**privilege** [3] - 24:22, 26:1, 32:12
**privy** [1] - 30:19
**probative** [1] - 31:5
**Procedure** [6] - 9:14, 9:17, 10:1, 10:3, 12:20, 31:19
**procedures** [1] - 9:12
**proceed** [6] - 3:13,

9:16, 15:13, 15:15, 29:24, 33:11
**proceedings** [1] - 36:11
**produce** [3] - 14:12, 18:3, 19:23
**produced** [11] - 4:4, 17:6, 18:7, 19:22, 19:24, 20:2, 24:12, 24:22, 26:10, 27:16
**product** [3] - 6:20, 7:11, 7:17
**production** [5] - 16:5, 18:10, 19:4, 24:11, 26:9
**products** [3] - 3:17, 3:24, 7:12
**professor** [2] - 23:13, 23:19
**prohibited** [1] - 9:19
**proof** [1] - 5:10
**proper** [1] - 22:7
**proportional** [1] - 31:20
**proposal** [4] - 19:11, 19:13, 20:7, 28:20
**proposed** [7] - 6:21, 10:25, 14:5, 14:22, 17:8, 17:9, 17:11
**prosecution** [2] - 9:25, 21:8
**prosecutors** [2] - 24:25, 25:2
**provide** [2] - 11:16, 29:3
**provided** [4] - 10:17, 13:17, 19:11, 28:3
**public** [1] - 19:20
**published** [3] - 16:14, 16:24
**pulled** [1] - 33:16
**purported** [1] - 31:3
**pursue** [3] - 20:25, 25:24, 27:10
**pursuit** [1] - 26:6
**purview** [1] - 19:19
**put** [9] - 5:6, 5:14, 5:21, 6:14, 20:6, 20:10, 21:9, 22:16

**Q**

**questioner** [3] - 9:1, 14:20, 15:16
**questions** [9] - 5:2, 8:2, 11:21, 13:18, 14:8, 20:13, 29:6, 33:10, 34:23

**quicker** [1] - 33:3

**R**

**raise** [1] - 20:8
**raised** [1] - 21:24
**Ralph** [1] - 23:11
**Raoufinia** [6] - 16:17, 21:10, 22:16, 23:5, 23:11, 23:13
**Raoufinia's** [2] - 22:6, 23:11
**reach** [1] - 30:1
**reached** [1] - 23:17
**read** [2] - 11:12, 26:15
**real** [2] - 12:11, 32:24
**really** [7] - 4:15, 18:18, 26:4, 30:22, 34:20, 34:21, 35:12
**reason** [2] - 8:8, 32:5
**reasonable** [1] - 3:11
**reassign** [1] - 29:17
**reassigned** [1] - 30:2
**received** [11] - 10:9, 12:1, 12:12, 13:3, 17:2, 20:6, 21:20, 22:17, 23:6, 23:15, 24:6
**recently** [1] - 21:5
**record** [2] - 17:19, 34:22
**reduced** [1] - 23:17
**reduction** [3] - 27:15, 33:15, 33:23
**Reed** [2] - 7:7, 10:20
**refer** [2] - 6:19, 7:13
**referred** [1] - 30:2
**refused** [1] - 18:23
**regard** [3] - 6:18, 10:1, 15:12
**regarding** [1] - 32:20
**regimens** [1] - 6:25
**regulatory** [6] - 6:22, 7:8, 10:24, 11:3, 28:15, 28:16
**rejected** [1] - 11:20
**rejoined** [2] - 4:14, 4:18
**relate** [1] - 6:20
**related** [6] - 3:16, 7:10, 8:2, 21:2, 22:14, 22:15
**relates** [3] - 7:12, 7:16, 26:17
**relating** [5] - 5:23, 10:25, 14:6, 23:13, 23:25
**relationship** [1] -

13:21
**relevance** [1] - 15:21
**relevant** [14] - 3:15, 3:18, 3:24, 4:6, 6:2, 6:16, 6:22, 7:9, 8:7, 8:9, 20:25, 21:23, 27:14, 31:3
**relief** [2] - 24:14, 28:17
**remaining** [5] - 5:20, 7:8, 12:3, 12:14, 31:14
**remote** [1] - 11:19
**remotely** [2] - 9:3, 15:15
**reopen** [1] - 26:4
**repeatedly** [2] - 11:20, 29:2
**report** [2] - 27:4, 27:23
**reported** [1] - 23:11
**reporter** [3] - 9:2, 14:19, 15:14
**Reporter** [1] - 36:13
**reports** [3] - 10:21, 11:4, 20:9
**representations** [2] - 6:12, 17:13
**request** [13] - 3:6, 16:22, 20:4, 20:8, 20:18, 22:22, 30:23, 31:21, 32:12, 32:13, 32:15, 33:5, 33:19
**requested** [1] - 33:21
**requesting** [4] - 8:14, 11:7, 11:10, 11:12
**requests** [3] - 4:2, 18:9, 32:19
**required** [2] - 9:13, 30:5
**research** [2] - 7:11, 7:24
**resolve** [1] - 29:1
**resolved** [1] - 14:23
**respect** [6] - 10:24, 14:15, 26:2, 30:24, 32:19, 34:16
**respond** [1] - 34:4
**responded** [2] - 34:5, 34:10
**response** [8] - 4:2, 16:21, 16:25, 18:9, 21:9, 25:3, 32:15, 34:13
**responses** [4] - 10:10, 11:18, 25:16, 34:11
**responsibilities** [2] - 14:1, 14:3

**responsible** [1] - 14:4
**responsive** [1] - 7:9
**rest** [2] - 13:22, 31:11
**review** [6] - 15:20, 16:24, 18:18, 26:19, 27:2, 27:20
**RICHARDS** [1] - 2:3
**Richards** [1] - 2:25
**right-hand** [1] - 17:9
**risk** [1] - 9:25
**robbed** [1] - 18:4
**role** [1] - 23:7
**ROORDA** [13] - 1:24, 3:7, 4:24, 5:8, 6:4, 6:18, 7:6, 8:11, 8:17, 8:24, 15:8, 35:14, 35:17
**Roorda** [2] - 2:20, 3:8
**route** [1] - 10:3
**Rule** [2] - 9:13, 31:19
**rule** [1] - 33:18
**rules** [1] - 12:19
**Rules** [4] - 9:17, 9:25, 10:3, 12:20
**ruling** [1] - 31:18
**rulings** [1] - 16:1

**S**

**sales** [1] - 10:18
**Sarbajna** [2] - 31:16, 35:10
**schedule** [6] - 19:2, 27:13, 28:11, 28:12, 29:22, 32:20
**scheduling** [2] - 15:11, 24:14
**science** [1] - 11:3
**scope** [1] - 17:20
**second** [1] - 15:25
**secondary** [2] - 12:11, 31:4
**section** [1] - 16:13
**secure** [1] - 13:4
**see** [7] - 4:13, 5:1, 17:7, 17:8, 24:23, 33:6, 33:7
**seek** [2] - 7:16, 28:23
**seeking** [6] - 3:9, 7:22, 8:25, 11:4, 19:7, 26:12
**seem** [1] - 14:7
**sense** [1] - 5:15
**sent** [2] - 19:14, 28:3
**September** [5] - 16:10, 17:18, 19:1, 19:25, 20:2
**serve** [1] - 13:1

**served** [1] - 10:2
**set** [1] - 29:21
**Several** [1] - 12:25
**several** [3] - 3:15, 11:23, 19:2
**Shage** [1] - 11:11
**SHANNON** [1] - 2:6
**Shannon** [9] - 3:2, 4:11, 4:19, 5:17, 10:7, 16:4, 29:11, 33:13, 35:14
**Sherkar** [2] - 31:16, 35:5
**shooting** [1] - 29:10
**show** [6] - 6:10, 17:12, 27:9
**showed** [1] - 4:3
**showing** [2] - 3:20, 9:24
**shows** [1] - 21:15
**Shrikant** [2] - 7:7, 11:11
**side** [4] - 17:7, 17:8, 17:9
**significant** [1] - 9:24
**simply** [3] - 14:22, 18:23, 20:8
**sitting** [3] - 32:22, 32:23, 34:15
**situation** [1] - 32:1
**six** [1] - 12:14
**slow** [1] - 30:22
**Snider** [5] - 11:21, 11:23, 13:19, 14:9, 14:22
**solely** [3] - 16:16, 21:11, 21:12
**solve** [1] - 11:18
**someone** [1] - 4:17
**soon** [1] - 14:23
**sorry** [5] - 4:9, 4:15, 4:22, 8:4, 34:25
**sort** [1] - 13:12
**sounds** [1] - 35:7
**specific** [7] - 3:24, 9:15, 19:14, 22:22, 26:11, 26:13, 32:19
**specifically** [2] - 5:2, 20:23
**spoken** [1] - 11:23
**spring** [1] - 32:25
**Stacy** [1] - 36:13
**stand** [2] - 13:9, 15:24
**standard** [4] - 16:18, 26:3, 26:5, 27:8
**start** [1] - 3:5
**started** [3] - 18:17, 18:22, 33:16

**statement** [1] - 22:15
**STATES** [1] - 1:1
**States** [1] - 1:17
**status** [1] - 29:20
**stay** [2] - 28:15, 28:16
**stems** [1] - 16:5
**stenographic** [1] - 36:11
**steps** [2] - 13:4, 13:8
**Steven** [1] - 2:19
**STEVEN** [1] - 1:21
**still** [11] - 3:20, 5:6, 5:9, 6:9, 9:2, 13:4, 13:8, 19:11, 26:14, 28:18, 33:22
**stipulation** [3] - 6:6, 6:8, 14:18
**stop** [1] - 5:11
**story** [2] - 18:19, 33:23
**Street** [1] - 1:13
**strongly** [1] - 10:15
**STUBBINGS** [2] - 2:7, 4:9
**Stubbings** [2] - 3:2, 4:10
**subject** [3] - 3:16, 13:23, 13:24
**subpoena** [1] - 32:10
**subpoenas** [4] - 22:22, 25:1, 32:7, 32:13
**substantial** [4] - 16:10, 18:4, 20:1
**substantially** [2] - 26:18, 30:10
**substantively** [1] - 18:1
**suddenly** [1] - 27:23
**suffered** [1] - 19:8
**sufficient** [4] - 15:5, 19:11, 19:13, 34:11
**supplemented** [1] - 34:19
**support** [1] - 10:11
**Suresh** [3] - 22:23, 23:9, 23:10
**switched** [1] - 7:20

**T**

**table** [1] - 17:12
**tactic** [1] - 18:15
**technical** [5] - 3:16, 7:5, 7:10, 13:22, 31:11
**Teleconference** [1] - 1:12

**teleconference** [1] - 2:15
**terribly** [1] - 28:12
**territory** [1] - 12:21
**testimony** [3] - 7:16, 8:16, 24:15
**THE** [59] - 1:1, 1:1, 1:16, 2:13, 2:22, 3:4, 4:16, 4:20, 5:3, 5:11, 5:25, 6:11, 7:3, 8:4, 8:13, 8:18, 10:4, 11:6, 11:15, 13:20, 14:11, 15:1, 15:6, 15:24, 20:12, 20:22, 21:14, 21:18, 21:22, 22:3, 22:8, 22:11, 22:21, 23:9, 23:21, 24:3, 24:9, 24:13, 24:21, 25:1, 25:4, 25:11, 25:14, 25:17, 29:8, 29:14, 30:4, 30:8, 30:19, 33:24, 34:12, 35:7, 35:10, 35:12, 35:16, 35:19, 35:22, 36:1, 36:4
**theory** [1] - 27:19
**they've** [7] - 13:8, 26:22, 26:23, 27:2, 27:4, 27:11, 27:12
**third** [2] - 23:13, 28:9
**third-party** [1] - 23:13
**thousand** [1] - 19:25
**three** [4] - 7:3, 7:19, 18:11, 29:13
**three-year** [1] - 7:19
**tie** [1] - 26:10
**tied** [1] - 22:9
**tight** [1] - 28:12
**timely** [5] - 3:10, 4:25, 20:6, 28:19, 32:5
**timing** [1] - 24:24
**today** [10] - 2:14, 6:12, 6:13, 13:9, 13:10, 17:23, 26:16, 32:22, 32:24, 34:15
**together** [1] - 22:10
**took** [1] - 24:20
**topic** [1] - 7:22
**topics** [3] - 4:6, 8:2, 11:21
**totum** [1] - 14:2
**transcript** [2] - 35:23, 36:11
**travel** [2] - 9:3, 9:6
**treated** [1] - 6:24
**trial** [17] - 5:14, 5:21, 18:11, 18:16, 18:17, 20:11, 20:14, 20:15,

20:17, 20:21, 28:13, 28:19, 29:16, 29:21, 31:1, 32:20, 32:24
**tried** [2] - 8:7, 29:1
**triple** [1] - 33:2
**true** [2] - 21:16, 36:10
**try** [6] - 11:18, 14:22, 18:15, 18:16, 25:21, 33:6
**trying** [3] - 14:24, 26:10, 31:25
**turn** [1] - 6:1
**turning** [1] - 31:21
**two** [13] - 7:6, 13:2, 16:6, 17:17, 18:9, 19:14, 20:3, 21:22, 22:9, 23:14, 24:18, 31:10, 35:4
**two-hour** [2] - 31:10, 35:4
**type** [1] - 17:21

**U**

**U.S** [3] - 14:20, 36:14
**ultimately** [2] - 7:19, 7:20
**unable** [1] - 8:1
**unconvincing** [1] - 9:23
**under** [9] - 6:24, 8:22, 9:17, 12:19, 15:11, 16:12, 16:18, 22:4, 25:23
**understood** [3] - 5:25, 6:11
**unfairly** [1] - 34:6
**UNITED** [1] - 1:1
**United** [1] - 1:17
**unless** [1] - 29:6
**unpack** [1] - 25:21
**unprepared** [2] - 10:14, 12:1
**unsuccessfully** [1] - 7:18
**up** [6] - 17:12, 19:17, 19:18, 21:8, 32:21, 33:16
**updated** [1] - 26:25
**upset** [1] - 18:14
**upwards** [2] - 15:4, 24:20

**V**

**validity** [5] - 3:18, 8:7, 10:11, 12:10, 15:22

**value** [1] - 31:5
**various** [1] - 23:4
**Venitz** [4] - 23:14, 23:19, 23:22, 32:10
**versus** [3] - 2:15, 8:19
**via** [1] - 14:13
**video** [7] - 9:18, 13:6, 14:13, 14:17, 14:21, 14:25, 31:8
**view** [1] - 29:18
**voluntary** [2] - 12:17, 14:21

**W**

**waived** [2] - 9:20, 19:18
**walk** [2] - 20:22, 22:21
**wants** [1] - 30:8
**weeks** [9] - 13:2, 16:6, 17:17, 18:9, 19:12, 19:14, 20:3, 23:15, 33:1
**whole** [1] - 34:16
**widths** [2] - 12:14, 13:13
**willing** [2] - 9:3, 15:13
**Wilmington** [1] - 1:14
**wise** [1] - 6:2
**wish** [2] - 30:19, 33:8
**withdrew** [2] - 14:21, 14:25
**witness** [5] - 3:23, 10:17, 10:18, 13:17, 14:8
**witnesses** [19] - 3:12, 3:15, 4:5, 4:7, 6:23, 7:4, 7:7, 7:8, 7:25, 10:13, 10:16, 12:1, 12:3, 12:25, 14:20, 17:16, 27:19, 35:1
**word** [1] - 28:14
**works** [1] - 9:4
**worth** [2] - 27:13, 28:7
**wow** [1] - 18:13
**wrote** [2] - 18:6, 35:2

**Y**

**year** [5] - 7:19, 16:13, 16:15, 22:1

**Z**

**Zoom** [1] - 8:19